STATE OF NEVADA, EX REL. BOARD OF PAROLE COMMISSIONERS; AND MS. DORLA M. SALLING, CHAIRWOMAN, APPELLANTS, v. RICHARD DAVID MORROW, RESPONDENT.

No. 53436

BRIAN KAMEDULA, APPELLANT, v. THE STATE OF NEVADA BOARD OF PAROLE COMMISSIONERS, RESPONDENT.

No. 54173

May 26, 2011                                   255 P.3d 224

---

[Rehearing denied July 13, 2011]
[En banc reconsideration denied September 20, 2011]

*Catherine Cortez Masto*, Attorney General, and *Cynthia R. Hoover* and *Binu G. Palal*, Deputy Attorneys General, Carson City, for the State of Nevada Board of Parole Commissioners and Dorla M. Salling.

*Richard David Morrow*, Lovelock, in Proper Person.

*Brian Kamedula*, Carson City, in Proper Person.

Before Douglas, C.J., Pickering and Hardesty JJ.

## OPINION

By the Court, Hardesty, J.:

In the two cases below, the district courts reached different conclusions regarding whether inmates are entitled to due process protections related to their parole release hearings. In considering that issue on appeal, we recognize that no statutory due process protections applied in these particular cases, and we conclude that, because the possibility of release on parole is not a protectable liberty interest, inmates are not entitled to constitutional or inherent due process rights regarding discretionary parole release. We clarify that *Stockmeier v. State, Department of Corrections*, 122 Nev. 385, 135 P.3d 220 (2006), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008), does not create due process rights related to parole release hearings, and as a result of the confusion stemming from that case, we explicitly adopt and further explain the judicial function test for determining whether a proceeding is quasi-judicial.

*FACTS*

*Morrow appeal*

Proper person respondent Richard David Morrow pleaded guilty to several sex offenses in 1990 and was sentenced to life in prison with the possibility of parole. In October 2006, Morrow was certified as not being at high risk to reoffend by the Psychological Review Panel[1] and granted parole, effective in February 2007. Before being released, however, the Psychological Review Panel assessed him as a Tier III sex offender. This reclassification precluded Morrow from being released pursuant to NRS 213.1214(1). Due to the new assessment and other expressed concerns, in April 2007, the Nevada Board of Parole Commissioners (the Parole Board) reconsidered its decision to release Morrow on parole. The Parole Board ultimately decided to defer his parole for two years.

In June 2007, Morrow challenged the Parole Board's procedure by filing a writ of mandamus in the district court seeking a new parole hearing, with proper notice, and a directive that the Parole Board provide to him copies of all of the documents in his parole file and all of the documents the Parole Board considered when it denied his parole. In his petition, Morrow argued that the Parole Board violated his due process rights because it did not notify him of the reconsideration hearing until five minutes before it began and denied his access to the documents it relied on in deferring parole.

The district court granted the writ and directed that (1) Morrow receive a new parole hearing; (2) the Parole Board provide him with proper notice of the hearing and the opportunity to speak or have a representative speak on his behalf; and (3) the Parole Board provide him with a copy of his risk assessment file, excluding confidential information relating to the victim. Following the court's directive, the Parole Board delivered Morrow's risk assessment file to him and held a new hearing in November 2008, resulting in another denial of parole. Morrow then sought in the district court an order to show cause why the Parole Board should not be held in contempt, arguing that the Parole Board did not comply with the district court's writ because it failed to provide Morrow with proper notice of the November 2008 parole hearing and copies of *all* of the documents that the Parole Board considered in denying him parole. The district court denied Morrow's request for an order to show cause but subsequently issued an order clarifying its original writ and directing the Parole Board to turn over every document it considered when it denied Morrow parole, including his parole file. Without citing any authority, the district court reasoned

---

[1]Pursuant to NRS 213.1214(1), an inmate convicted of certain sex offenses shall not be released on parole until the Psychological Review Panel determines that he "does not represent a high risk to reoffend."

that due process required that Morrow receive all the documents and the exact information that the Parole Board considered when it denied him parole. The Parole Board now appeals.

*Kamedula appeal*

Kamedula was convicted of sexual assault in 1987 and sentenced to life in prison with the possibility of parole. In September 2008, the Parole Board held a hearing and denied Kamedula parole. Kamedula subsequently filed a complaint in the district court, arguing that the Parole Board violated the Open Meeting Law, and later amended the complaint to add claims that the Parole Board denied him certain due process rights, including the ability to present certain evidence and the ability to cross-examine witnesses during the hearing, and it also failed to provide him with a written decision or the ability to appeal. He further claimed that the Parole Board violated former NRS 213.130, as amended in 2007, by failing to afford him the due process protections set forth therein.[2] The Parole Board moved to dismiss the complaint under NRCP 12(b)(5), arguing that the Open Meeting Law did not apply to parole release hearings pursuant to *Witherow v. State, Board of Parole Commissioners*, 123 Nev. 305, 167 P.3d 408 (2007), and that the asserted procedural protections of former NRS 213.130 did not apply at the time of Kamedula's parole hearing. The district court concluded that neither the Open Meeting Law nor the statutory due process protections of former NRS 213.130 applied to Kamedula's Parole Board hearing and dismissed the complaint. Kamedula now appeals.

These appeals raise solely legal questions, which we review de novo. *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008).

## DISCUSSION

Although inmates in Nevada are currently afforded statutory due process protections related to parole release hearings, those protections did not apply to Morrow's and Kamedula's parole hearings. In June 2007, the Legislature amended NRS 213.130 to provide minimum procedural due process protections related to those proceedings, 2007 Nev. Stat., ch. 528, § 10.5, at 3261-62; S.B. 471, 74th Leg. (Nev. 2007), but suspended those protections

---

[2]The protections Kamedula claims he was not given include: notice of the Parole Board hearing, an opportunity to attend the hearing or have a representative speak at the hearing on his behalf, and timely notice of the decision or "any specific recommendations for improvement."

in June 2008. 2008 Nev. Stat., ch. 6, § 1, at 5-7; S.B. 4, 24th Special Sess. (Nev. 2008). For reasons unrelated to the due process protections, on October 7, 2008, the United States District Court for the District of Nevada permanently enjoined enforcement of the provisions included in A.B. 579 and S.B. 471, passed during the 2007 legislative session, which included the amendments made to NRS 213.130, as well as changes to several other statutes. *Am. Civil Liberties Union v. Cortez Masto*, 719 F. Supp. 2d 1258, 1260 (D. Nev. 2008). During the 2011 legislative session, the Legislature reenacted the due process protections of NRS 213.130 enjoined by *Cortez Masto*. 2011 Nev. Stat., ch. 23, § 3, at 67. Assembly Bill 18, section 3(9)-(10) amended NRS Chapter 213 such that inmates must now be provided with notice and the right to attend the hearing, have representation, and speak on his or her behalf. *Id.*

Because Morrow's hearing occurred in April 2007, before the Legislature amended former NRS 213.130, and Kamedula's hearing occurred in September 2008, during the Legislature's temporary suspension of the statute's due process protections, those statutory due process protections did not apply to their respective hearings. Therefore, our analysis is limited to whether Morrow and Kamedula should have been afforded constitutional or inherent due process protections during their parole release hearings.

Morrow and Kamedula argue that such protections exist, particularly in light of prior decisional law concluding that the Parole Board is a quasi-judicial body, *Witherow v. State, Bd. of Parole Comm'rs*, 123 Nev. 305, 311-12, 167 P.3d 408, 412 (2007), and discussing the due process protections afforded in quasi-judicial proceedings, *Stockmeier v. State, Dep't of Corrections*, 122 Nev. 385, 135 P.3d 220 (2006), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008). We acknowledge that, in Nevada, constitutional due process rights do not attach to parole release hearings because no liberty interest is at stake, and we take this opportunity to clarify that our analysis of quasi-judicial proceedings in *Stockmeier* did not create due process rights where no liberty interest exists. In doing so, we also expressly adopt, and clarify the proper application of, the judicial function test for determining whether a proceeding is quasi-judicial.

*Due process rights do not apply to parole release hearings in Nevada*

*Constitutional due process*

Both "[t]he United States and Nevada Constitutions provide that no person shall be deprived of liberty without due process of

law." *Scarbo v. Dist. Ct.*, 125 Nev. 118, 124, 206 P.3d 975, 979 (2009); *see also* Nev. Const. art. 1, § 8. However, those due process protections apply only "when government action deprives a person of liberty or property." *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979). Therefore, for Morrow and Kamedula to be entitled to constitutional due process protections during their parole release hearings, they must have a protectable liberty interest at stake in those proceedings.

In *Greenholtz*, the United States Supreme Court held that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. . . . [T]he conviction, with all its procedural safeguards, has extinguished that liberty right." *Id.* However, the Supreme Court noted that a state may create an "expectancy of release . . . entitled to some measure of constitutional protection" by the language used in its statutory scheme. *Id.* at 12.

This court has recognized on several occasions that Nevada's parole statute is purely discretionary and thus creates no expectation of release. NRS 213.1099(1) states, "Except as otherwise provided in this section . . . , the Board *may* release on parole a prisoner who is otherwise eligible for parole pursuant to NRS 213.107 to 213.157, inclusive, and section 3 of [Assembly Bill 18]."[3] (Emphasis added.) We have consistently pointed out that this discretionary language does not create a protectable liberty interest sufficient to invoke the Due Process Clause. *See Weakland v. Bd. of Parole Comm'rs*, 100 Nev. 218, 220, 678 P.2d 1158, 1160 (1984) (recognizing *Greenholtz* and holding that because "NRS 213.1099 does not create a constitutionally cognizable liberty interest sufficient to invoke the protections of the Due Process Clause, it follows that the Board is not constitutionally required to render any statement of reasons why parole is denied"); *Severance v. Armstrong*, 96 Nev. 836, 839, 620 P.2d 369, 370 (1980) (recognizing *Greenholtz* and rejecting appellant's argument that the Parole Board violated his due process rights in denying his parole application; holding that "NRS 213.1099 does not confer a legitimate expectation of parole release and therefore does not create a constitutionally cognizable liberty interest sufficient to invoke due process"), *reh'g denied*, 97 Nev. 95, 96, 624 P.2d 1004, 1005 (1981) (recognizing that the statement in *Goldsworthy v. Hannifin*, 86 Nev. 252, 468 P.2d 350 (1970), that legislative acts of grace, such as the right to apply for parole, must be administered in accordance with due process, does not "mean that due process rights attach to all parole statutes").

---

[3]The Legislature amended NRS 213.1099(1) during the 2011 legislative session to include the amendments made by Assembly Bill 18, section 3, which reenacted statutory due process protections related to Parole Board hearings. 2011 Nev. Stat., ch. 23, § 5, at 67-68.

Instead, Nevada's parole statute "only gives rise to a 'hope' of release on parole." *Weakland*, 100 Nev. at 219-20, 678 P.2d at 1160. As the Legislature has provided, release on parole is "an act of grace of the State," and "it is not intended that the establishment of standards relating [to parole] create any such right or interest in liberty or property or establish a basis for any cause of action against the State, its political subdivisions, agencies, boards, commissions, departments, officers or employees." NRS 213.10705. Accordingly, because Nevada's parole release statute does not create a liberty interest, we reiterate that inmates are not entitled to constitutional due process protections with respect to parole release hearings. While it is clear that Nevada's statutes do not create a liberty interest sufficient to afford any guaranteed due process protections during a parole release proceeding, we next examine Morrow's and Kamedula's argument that recent caselaw affords such guaranteed protections.

*Stockmeier v. State, Department of Corrections*

Morrow and Kamedula argue on appeal that our holding in *Stockmeier v. State, Department of Corrections*, 122 Nev. 385, 135 P.3d 220 (2006), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008), recognizes due process protections necessary or inherent in quasi-judicial proceedings like parole release hearings.[4] In *Stockmeier*, we examined whether Psychological Review Panel hearings are exempt from Nevada's Open Meeting Law pursuant to the judicial proceeding exception in NRS 241.030(4)(a).[5] 122 Nev. at 390, 135 P.3d at 223. To resolve this issue, we first determined that the judicial proceeding exemption extended to quasi-judicial proceedings and then explained that quasi-judicial proceedings "are those having a judicial character that are performed by administrative agencies." *Id.* In discussing whether administrative proceedings have a "judicial character," we focused on whether the proceedings maintained trial-like attributes. In so doing, we in-

---

[4]In *Witherow v. State, Board of Parole Commissioners*, 123 Nev. 305, 311-12, 167 P.3d 408, 412 (2007), we held that because the Parole Board performs a judicial function when determining parole status and because the Legislature so intended, parole release hearings are quasi-judicial. *See also Raggio v. Campbell*, 80 Nev. 418, 423, 395 P.2d 625, 627 (1964). We also noted that when the Legislature amended NRS 213.130(3) in 2007, it specifically confirmed that Parole Board hearings are quasi-judicial. *See Witherow*, 123 Nev. at 310, 167 P.3d at 410-11; 2007 Nev. Stat., ch. 528, § 10.5, at 3261. When the Legislature reenacted the provisions of former NRS 213.130 in 2011, it again maintained that Parole Board hearings are quasi-judicial. 2011 Nev. Stat., ch. 23, § 3, at 66.

[5]NRS 241.030(4)(a) states that the Open Meeting Law does not "[a]pply to judicial proceedings."

extricably linked quasi-judicial proceedings to four due process rights:

> At a minimum, a quasi-judicial proceeding must afford each party (1) the ability to present and object to evidence, (2) the ability to cross-examine witnesses, (3) a written decision from the public body, and (4) an opportunity to appeal to a higher authority.

*Id.* at 391-92, 135 P.3d at 224. Based on those due process considerations, we held that Psychological Review Panel hearings did not afford each of those due process rights and were therefore not quasi-judicial. *Id.* at 392, 135 P.3d at 224-25.

Referring to that holding, Morrow and Kamedula argue that the converse must also be true: if a proceeding is quasi-judicial, it must provide due process protections. Thus, they assert, because parole release hearings are quasi-judicial, those hearings must necessarily afford the due process protections enumerated in *Stockmeier*. We disagree.

Because the issue in *Stockmeier* concerned whether an exception to the Open Meeting Law applied, our opinion in that case highlighted the similarities between the Open Meeting Law and the due process protections afforded in judicial proceedings as a means of differentiating proceedings subject to the Open Meeting Law from those quasi-judicial proceedings that are exempt from those laws because the protections that they afford serve a similar purpose. *Id.* at 391, 135 P.3d at 224. Inasmuch as *Stockmeier* implies that inmates have inherent due process protections arising from the quasi-judicial status of parole release hearings, we reject that implication. *Stockmeier* did not create due process rights where no liberty interest exists. Nonetheless, as the quoted language in *Stockmeier* has caused some confusion about the nature of quasi-judicial proceedings in Nevada, we take this opportunity to expressly adopt and clarify the application of the judicial function test in this state.

### *The judicial function test*

The judicial function test is a means of determining whether an administrative proceeding is quasi-judicial by examining the hearing entity's function.[6] *See Witherow*, 123 Nev. at 312, 167 P.3d at 412; *id.* at 314, 167 P.3d at 412-14 (HARDESTY, J., concurring and dissenting). If the hearing entity's function is judicial in nature, its acts qualify as quasi-judicial. *Id.* In determining whether a hearing entity's function is judicial, other jurisdictions consider whether

---

[6]The same judicial function test is also used to determine quasi-judicial immunity from liability. *See Witherow*, 123 Nev. at 311-12, 167 P.3d at 412.

the hearing entity has authority to: " '(1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) make binding orders and judgments; (4) affect the personal property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties.' " *Craig v. Stafford Const., Inc.*, 856 A.2d 372, 377 (Conn. 2004) (quoting *Kelley v. Bonney*, 606 A.2d 693, 703 (Conn. 1992), and considering, also, whether a sound policy basis exists for protecting the hearing entity from suit).[7] These factors are not exclusive, and determining whether a proceeding is quasi-judicial is an imprecise exercise because many different types of entities perform judicial functions. *Id.* We have previously used the judicial function test in this state to determine whether entities act in a quasi-judicial manner when performing their administrative duties,[8] and we now expressly adopt the judicial function test for doing so in the future.

When considering whether Psychological Review Panel hearings are quasi-judicial and thus exempt from the Open Meeting Law in *Stockmeier*, this court signaled that it was applying the judicial function test, stating that "[q]uasi-judicial proceedings are those proceedings having a judicial character." 122 Nev. at 390, 135 P.3d at 223. We then indicated that a quasi-judicial proceeding is one that provides minimum due process protections, implying that this was necessary regardless of any other considerations of judicial character. *Id.* at 391-92, 135 P.3d at 224. We now clarify that when utilizing the judicial function test, the due process protections afforded during a proceeding do not, alone, determine whether it is quasi-judicial; instead, whether procedural protections are afforded during the proceeding goes to the ability of the hearing entity to hear witnesses and make a decision affecting property rights and is but one consideration in determining whether the hearing entity is performing a judicial function. *See Raggio*, 80 Nev. at 423, 395 P.2d at 627.

[7]*See also Ascherman v. Natanson*, 100 Cal. Rptr. 656, 659 (Ct. App. 1972) ("The primary factors which determine the nature of the proceedings are: (1) whether the administrative body is vested with discretion based upon investigation and consideration of evidentiary facts, (2) whether it is entitled to hold hearings and decide the issue by the application of rules of law to the ascertained facts and, more importantly (3) whether its power affects the personal or property rights of private persons.").

[8]*See, e.g., Marvin v. Fitch*, 126 Nev. 168, 232 P.3d 425 (2010) (determining that the State Board of Equalization performed quasi-judicial functions and thus was entitled to immunity); *Witherow*, 123 Nev. at 312, 167 P.3d at 412; *Raggio v. Campbell*, 80 Nev. 418, 423, 395 P.2d 625, 627 (1964) (holding that parole boards perform a quasi-judicial function when releasing prisoners on parole).

To hold that any proceeding that provides minimum due process protections is quasi-judicial and that, therefore, any quasi-judicial proceeding must afford certain specified due process protections, as Morrow and Kamedula ask us to do, would render all proceedings in which the participants are given notice and an opportunity to be heard quasi-judicial, even if the supervising official can undertake no judicial function. For example, county boards of commissioners, the Public Utilities Commission, the Board of Architecture, and other entities could claim that they are quasi-judicial simply by affording the protections enumerated in *Stockmeier*. *See Witherow*, 123 Nev. at 314, 167 P.3d at 413 (HARDESTY, J., concurring and dissenting) (stating that "defining quasi-judicial proceedings as any that provide due process protections . . . creates an absurd result by permitting public bodies to easily circumvent the Open Meeting Law"). We decline to adopt this approach, as this would be an improper application of the judicial function test and would create an absurd result with significant implications beyond Parole Board hearings. Accordingly, *Stockmeier* neither created any new nor recognized any inherent due process rights, and Morrow's and Kamedula's arguments in that regard fail.

## CONCLUSION

No statutory due process protections applied during Morrow's and Kamedula's parole hearings, and because Nevada's parole release statute does not create a liberty interest sufficient to invoke due process protections, we conclude that inmates are not entitled to constitutional due process protections regarding discretionary parole release. We clarify that *Stockmeier* did not create or recognize due process rights where no liberty interest exists, and thus, the Parole Board is not required to afford inmates the due process protections enumerated in *Stockmeier*. Therefore, for the reasons discussed above, we conclude that in the *Morrow* appeal, the district court abused its discretion in requiring the State to provide Morrow with a copy of every document the Parole Board considered when it denied him parole. We further conclude that the district court properly dismissed Kamedula's complaint because he failed to state a claim against the Parole Board upon which relief may be granted. *See Buzz Stew*, 124 Nev. at 227-28, 181 P.3d at 672.

Accordingly, we reverse the clarification order of the district court in the *Morrow* appeal, Docket No. 53436, and we affirm the order of the district court in the *Kamedula* appeal, Docket No. 54173.

DOUGLAS, C.J., and PICKERING, J., concur.