133 Nev., Advance Opinion 45

# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL P. ANSELMO,
Petitioner,
vs.
CONNIE BISBEE, CHAIRMAN; SUSAN
JACKSON, TONY CORDA, ADAM
ENDEL, COMMISSIONERS; AND THE
STATE OF NEVADA BOARD OF
PAROLE,
Real Parties in Interest.

No. 67619

FILED

JUN 29 2017



Original petition for extraordinary relief requesting the Parole Board to reconsider its decision to deny parole partially based on an inapplicable aggravating factor.

*Petition granted.*

Brownstein Hyatt Farber Schreck, LLP, and Kirk B. Lenhard and Emily A. Ellis, Las Vegas,
for Petitioner.

Adam Paul Laxalt, Attorney General, Jeffrey M. Conner, Assistant Solicitor General, and Daniel M. Roche, Deputy Attorney General, Carson City,
for Real Parties in Interest.

_____

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

Generally, an inmate does not have any protectable due process or liberty interest in release on parole, unless that right is created by state statute. Given the clear discretionary language of Nevada's parole statute, this court has consistently held that Nevada inmates have no protectable liberty interest in release on parole. Accordingly, this court will not disturb a determination of the Nevada Parole Board (Board) to deny parole for any reason authorized by regulation or statute.

Nonetheless, eligible Nevada inmates do have a statutory right to be considered for parole by the Board. When the Board clearly misapplies its own internal guidelines in assessing whether to grant parole, this court cannot say that the inmate received the consideration to which they are statutorily entitled. Therefore, under the limited circumstances presented in this case, we conclude that a new parole hearing is warranted.

*FACTS AND PROCEDURAL HISTORY*

In 1972, appellant Michael P. Anselmo was convicted of murder and sentenced to life in prison without the possibility of parole. He sustained subsequent convictions for escape in 1976 and 1977, and was sentenced to a consecutive ten years for each conviction.

For the next twenty years, Anselmo largely became a model prisoner. In 2006, the Pardons Board commuted his sentences to life with the possibility of parole after five years, with one concurrent ten-year sentence, and one consecutive ten-year sentence.

Between 2006 and 2012, Anselmo appeared before the Parole Board on three separate occasions. Each time, the Board denied parole,

 

primarily citing to the seriousness of Anselmo's underlying offense and/or the impact of his offense on the victim.

Anselmo appeared before the Parole Board for the hearing at issue on November 17, 2014. Pursuant to the standards promulgated in the Nevada Administrative Code, the Board completed a Parole Risk Assessment, which assigned Anselmo's offense a "severity level" of "[h]ighest," and Anselmo a "[r]isk [s]core" of "[l]ow," indicating that the Board should consider certain aggravating and mitigating factors in determining whether parole was appropriate.

As mitigating factors, the Board noted that Anselmo had not committed a disciplinary infraction since 2007, had community or family support, would be paroled to his pending escape sentence, and had participated in extensive educational programming. As aggravating factors, the Board noted the impact on the victim and/or community, that Anselmo had sustained two convictions for escape while incarcerated, and that the "[n]ature of criminal record is increasingly more serious: Previous offenses are property crimes."

The three hearing members who conducted the parole hearing recommended granting parole. That recommendation was not, however, ratified by a majority of the Board, as the remaining four Board members voted to deny parole. The Board's written decision indicated that the "[n]ature of criminal record is increasingly more serious" and the "[i]mpact on victim(s) and/or community." Anselmo filed a request for reconsideration with the Board, which was denied.

Anselmo now argues that he is entitled to a new parole hearing because (1) the Board's denial of parole based on certain immutable characteristics, such as the seriousness of the underlying

Supreme Court
of
Nevada

(O) 1947A

3

offense, violates the Due Process Clause; and (2) the Board failed to follow its own internal guidelines in assessing the applicable aggravating and mitigating factors.

## DISCUSSION

*Standard of review*

"A writ of mandamus is available to compel the performance of an act that the law requires . . . or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); *see* NRS 34.160. "An arbitrary or capricious exercise of discretion is one founded on prejudice or preference rather than on reason, or contrary to the evidence or established rules of law." *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 931-32, 267 P.3d 777, 780 (2011) (citation omitted) (internal quotation marks omitted). "[W]here there is [no] plain, speedy and adequate remedy in the ordinary course of law," extraordinary relief may be available. NRS 34.170; *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991).

In this case, there is no applicable statutory vehicle through which Anselmo may challenge the Board's actions. Accordingly, we consider whether the actions of the Board were contrary to the established rules of law, warranting the issuance of a writ of mandamus.

*The Board may deny parole for any reason authorized by statute*

When an inmate becomes eligible for parole, "the [Parole] Board shall consider and may authorize the release of the prisoner on parole." NRS 213.140(1). Despite this guarantee that an eligible inmate will be considered for parole, "the release . . . of a person on parole . . . is an act of grace of the State. No person has a right to parole . . . ." NRS 213.10705.

 

The United States Supreme Court has determined that an inmate does not have any protectable due process or liberty interest in release on parole, unless that right is created by state statute. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). This court has consistently held that given its discretionary language, Nevada's parole statute creates no "protectable liberty interest sufficient to invoke the Due Process Clause." *State, Bd. of Parole Comm'rs v. Morrow*, 127 Nev. 265, 271, 255 P.3d 224, 228 (2011); *see also Weakland v. Bd. of Parole Comm'rs*, 100 Nev. 218, 220, 678 P.2d 1158, 1160 (1984) (holding that because no due process right to parole exists, the Board is not constitutionally required to provide any reason for the denial of parole); *Severance v. Armstrong*, 96 Nev. 836, 839, 620 P.2d 369, 370 (1980).

Despite this firmly settled law, Anselmo urges this court to adopt the California approach taken in *In re Lawrence*, 190 P.3d 535 (Cal. 2008), with respect to the circumstances in which parole may be denied based on the egregiousness of the underlying offense. Under *Lawrence*, parole may be denied based on the egregiousness of the underlying offense only if the parole board also finds that the inmate continues to pose a current threat to public safety. *Id.* at 560. In other words, the court concluded that "[t]he relevant inquiry for a reviewing court is not merely whether an inmate's crime was especially callous, or shockingly vicious or lethal, but whether the identified facts are *probative* to the central issue of *current dangerousness*." *Id.* Accordingly, the California court determined that where the record was "devoid of any evidence" indicating that the inmate posed a current threat to public safety, the inmate's "due process and statutory rights were violated by the . . . reliance upon the immutable and unchangeable circumstances of her commitment offense." *Id.* at 564.

There is, however, a significant difference between the parole statutes at issue in *Lawrence* and those in Nevada that is central to the decision in *Lawrence*. Specifically, the California Parole Board *"must* grant parole *unless* it determines that *public safety* requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction." *Id.* at 547 (internal quotation marks omitted). Based on that language, the California Supreme Court has determined that eligible California inmates have a due process right in the grant of parole, such that a decision to deny parole is subject to judicial review. *See In re Rosenkrantz*, 59 P.3d 174, 205 (Cal. 2002). This fact is central to the conclusion in *Lawrence* that some evidence must support a finding of current dangerousness. *See* 190 P.3d at 560.

In contrast, as discussed above, the Nevada statutory scheme does not provide any due process right in the grant of parole. Therefore, unlike the California courts, this court generally will not review the evidence supporting a decision of the Board. *See Morrow*, 127 Nev. at 271-72, 255 P.3d at 228 (reiterating that no cause of action exists when parole is denied). Both NRS 213.1099(2)(c) and NRS 213.10885(2)(a) clearly provide that the Board "shall" consider the seriousness of the underlying offense in determining whether to grant or deny parole. Given that Nevada law clearly allows for the denial of parole based on the severity of the crime committed, it cannot be said that the Board acted contrary to established law in considering the seriousness of the underlying offense. As such, the Board's actions in this respect would not warrant relief in mandamus. *See Armstrong*, 127 Nev. at 931-32, 267 P.3d at 780 (explaining that writ of mandamus may issue upon a showing that a state

agency acted "contrary to the . . . established rules of law" (internal quotation marks omitted)).

*The Board must follow its internal guidelines*

Anselmo also argues that he is entitled to a new parole hearing because the Board failed to follow its internal guidelines when it noted as a reason for denial that the "[n]ature of criminal record is increasingly more serious." This court agrees.

Pursuant to NRS 213.1099(2) and NRS 213.10885(1), the Board must promulgate detailed standards to determine whether the release of an inmate on parole is appropriate. These standards are codified in the Nevada Administrative Code. Under NAC 213.512(1), the Board must first assign "a severity level" to the crime for which parole is being considered. The Board must then assign "a risk level" "using a combination of risk factors that predict recidivism." NAC 213.514(1)-(2). Based on these scores, NAC 213.516 provides an assessment regarding whether to grant parole, deny parole, or consider the other aggravating and mitigating factors set forth in NAC 213.518.

In this case, the severity level of Anselmo's crime was rated "[h]ighest," while his risk level was considered "[l]ow." In these circumstances, NAC 213.516 indicates that the Board should consider aggravating and mitigating factors. The Board noted multiple mitigating factors in Anselmo's favor, including his favorable disciplinary record, his participating in programming, family support, and the fact that he would be paroled to a consecutive sentence. *See* NAC 213.518(3)(a), (c), (g), and (i). As aggravating factors, the Board noted the severe impact of the crime on the victim, as provided by NAC 213.518(2)(g), and also noted that the "[n]ature of criminal record is increasingly more serious," as provided by NAC 213.518(2)(k).

With respect to the aggravating factor under NAC 213.518(2)(k), the internal guidelines for the Division of Parole and Probation state:

> **Nature of criminal record is increasingly more serious.**
>
> Indicate this factor if criminal conduct of the person has escalated over time to include violence toward victims or others, or the scale of criminal activity has increased over time. If the person is now serving a sentence of life, or Murder/Sexual Assault, don't use this as the person has already committed the most serious of crimes. This factor is used as a possible indicator of more serious activity in the future.

*Nevada Parole Guidelines Aggravating and Mitigating Factors Definitions*, http://parole.nv.gov/uploadedFiles/parolenvgov/content/Information/Aggravating_and_Mitigating_Factors_Definitions.pdf (last visited March 21, 2017). Based on the plain language of the internal guidelines, this aggravator should not have been applied to Anselmo.

This court will not review the ultimate decision of the Board to grant or deny parole, as Anselmo has no liberty interest in release on parole. *Morrow*, 127 Nev. at 271-72, 255 P.3d at 228. Nonetheless, NRS 213.140(1) clearly provides that "the Board shall consider" eligible inmates for parole. Therefore, while Anselmo has no due process right in the grant of parole itself, Nevada law clearly confers a right to be "consider[ed]" for parole.

In evaluating whether the Board's error impacted Anselmo's right to be considered for parole, we find the South Carolina case of *Cooper v. South Carolina Department of Probation, Parole & Pardon Services*, 661 S.E.2d 106 (S.C. 2008), to be instructive. In *Cooper*, the South Carolina Supreme Court examined a case in which an inmate argued that the

SUPREME COURT
OF
NEVADA

(O) 1947A

South Carolina Parole Board's failure to consider all statutorily mandated criteria constituted an impermissible infringement on the inmate's statutory right to be reviewed by the Board. *Id.* at 110.[1]

While noting that it appeared the Board had denied parole for entirely permissible reasons, the court observed:

> If a Parole Board deviates from or renders its decision without consideration of the appropriate criteria, we believe it essentially abrogates an inmate's right to parole eligibility and, thus, infringes on a state-created liberty interest.
>
> Undoubtedly, the Parole Board is the sole authority with respect to decisions regarding the grant or denial of parole. However, the Legislature created this Board to operate within certain parameters. We do not believe the Legislature established the Board and intended for it to render decisions without any means of accountability.

*Id.* at 111. Accordingly, the court determined the inmate was entitled to relief in the form of a new parole hearing. *Id.* at 112.

While not factually identical, *Cooper* indicates that while the decision to grant or deny parole is not generally reviewable, the Board is still obligated to act within established parameters. Notably, the error in this case is not related to the weight or sufficiency of the evidence underlying any of the criteria relevant to the decision to deny parole. Rather, the Board's internal guidelines clearly indicated that the aggravator set forth in NAC 213.518(2)(k) should not be used in those

---

[1]As in Nevada, parole in South Carolina is a privilege, not a right. *Cooper*, 661 S.E.2d at 110. However, inmates who are eligible for parole are entitled by statute to a yearly review by the parole board. S.C. Code Ann. § 24-21-620 (2007).

cases where the inmate is serving a life sentence for murder. Notably, the decision of the Board was extremely close, with the three members voting to grant parole. Under these limited circumstances, we conclude that the Board's consideration of the inapplicable aggravator in NAC 213.518(2)(k) infringed upon Anselmo's statutory right to receive proper consideration for parole. Given the Board's clear error, we conclude that extraordinary relief is necessary in this instance.

## CONCLUSION

Parole is an act of grace in Nevada, and this court will not disturb a decision to deny parole for any reason authorized by statute. Nonetheless, eligible Nevada inmates have a statutory right to be considered for parole by the Board. This court cannot say that an inmate receives proper consideration when the Board's decision is based in part on an inapplicable aggravating factor.

Therefore, we grant Anselmo's petition for extraordinary relief, and direct the clerk of this court to issue a writ of mandamus instructing the Board to vacate its November 17, 2014, denial of parole and conduct a new parole hearing in which NAC 213.518(2)(k) is not applied.

_____, J.
Stiglich

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre