**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-2165

MALCOLM WIENER,

Plaintiff – Appellant,

v.

AXA EQUITABLE LIFE INSURANCE COMPANY,

Defendant – Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge. (3:18−cv−00106−RJC−DSC)

Argued:  December 6, 2022                    Decided:  January 20, 2023

Before GREGORY, Chief Judge, WILKINSON, Circuit Judge, and John A. GIBNEY, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Gregory and Senior Judge Gibney joined.

**ARGUED:**  Ross Fulton, RAYBURN COOPER & DURHAM, P.A., Charlotte, North Carolina, for Appellant.  Matthew Woodruff Sawchak, ROBINSON, BRADSHAW & HINSON, P.A., Raleigh, North Carolina, for Appellee. **ON BRIEF:** David G. Webbert, JOHNSON, WEBBERT & GARVAN, LLP, Augusta, Maine; Richard H. Fallon, Jr., Cambridge, Massachusetts; Carolyn T. Seely, Greenwich, Connecticut, for Appellant. John R. Wester, Stephen D. Feldman, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Appellee.

WILKINSON, Circuit Judge:

Malcolm Wiener appeals the district court's post-trial dismissal of his case for lack of subject-matter jurisdiction. A jury found that AXA Equitable Life Insurance Company negligently reported false medical information about Wiener to an information clearinghouse used by insurance companies, causing him to become uninsurable. Despite the fact that the parties satisfied the requirements for federal diversity jurisdiction, and the fact that both parties litigated the entire case through trial under North Carolina law, the district court decided that Connecticut law applied and found itself deprived of subject-matter jurisdiction by virtue of a Connecticut statute. This was error. Choice of law is waivable and was waived here. And even if Connecticut's law applied, it would not have ousted federal jurisdiction. Finding no merit in the alternative ground for affirmance that AXA advances with respect to liability, we reverse and remand the case for further proceedings in accordance with this opinion.

I.

Because Wiener won a jury verdict, we recite the facts as the jury found them, construe all disputed facts in his favor, and give him the benefit of all reasonable inferences. *See Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 279 (4th Cir. 1999).

Wiener, a citizen of Connecticut, purchased $16 million in life insurance from AXA Equitable, a citizen of New York, in the 1980s. After Wiener's policy lapsed in 2013, he applied for reinstatement and authorized AXA to access his medical records. AXA conducted a medical assessment of Wiener's reinstatement application without attempting to speak to Wiener's primary care doctor and without reviewing the follow-up tests in his

2

medical records. AXA then negligently and erroneously concluded that Wiener suffered from four serious medical conditions.

Based on its flawed review of Wiener's medical history, AXA's North Carolina office reported false diagnosis "codes" to an information exchange—the Medical Information Bureau (MIB). The MIB is a consortium of about 400 companies, which write about 90–95% of the individual life insurance policies in the United States. When an MIB member reviews an applicant's medical records, it reports any medical conditions that might be relevant to a later underwriter in the form of standardized six-character codes. Wiener's application was assigned to an AXA underwriter in Connecticut, Hallie Hawkins, who reviewed his medical records and asked her colleague in AXA's North Carolina office, Sandra Huffstetler, to report Wiener's MIB codes.

In 2014, AXA declined Wiener's application for reinstatement. So Wiener's insurance agent submitted new applications for a $16 million policy to at least eight other insurers. Two carriers made preliminary offers for $10 million policies at double the standard rate. No other carrier offered Wiener a policy. Several insurance-company representatives informed Wiener's agent that Wiener's MIB codes adversely affected their determination, and an expert testified that at least one code that AXA incorrectly reported was a "hot button[]" that would deter carriers from offering insurance. J.A. 1581.

Wiener sued AXA in North Carolina state court in 2018. His complaint alleged that Huffstetler, who worked in AXA's North Carolina operations center, reported false conclusions about his medical conditions to the MIB, causing him to become uninsurable. The complaint included four counts under North Carolina law: (1) negligent

3

misrepresentation; (2) libel; (3) negligence; and (4) violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. AXA removed the case to the Western District of North Carolina based on diversity of citizenship. AXA's answer cited North Carolina law and did not raise any choice-of-law issues. *See* J.A. 146.

The district court denied AXA's motion for summary judgment with respect to Wiener's claim that AXA negligently caused him to become uninsurable. It concluded that there was a "genuine dispute of fact as to whether the MIB codes effectively rendered [Wiener] uninsurable or insurable at a significantly increased cost." *Id.* at 235. The court granted AXA summary judgment on Wiener's remaining claims. AXA's memorandum supporting its summary-judgment motion, the court's summary-judgment decision, and AXA's trial brief all cited North Carolina law as the governing law.

A jury trial on Wiener's negligence claim was held in September 2020. AXA moved for a directed verdict, arguing that Wiener's claimed injury was categorical uninsurability, and that this injury was contradicted by his own evidence because several companies gave Wiener preliminary offers of insurance. The district court denied the motion. The jury subsequently found AXA liable for negligence and awarded Wiener $8 million—the value of the $16 million death benefit from his lapsed policies less $8 million because Wiener had not mitigated his damages.

AXA moved for post-trial relief. Its motion objected to the court's subject-matter jurisdiction for the first time. Relying on North Carolina law, AXA asserted that an exclusive-remedies provision of North Carolina's Consumer and Customer Information Privacy Act (CCIPA) preempted Wiener's negligence claim and deprived the court of

4

subject-matter jurisdiction. AXA also challenged the sufficiency of the evidence. In response, Wiener argued, *inter alia*, that the North Carolina statute did not apply because it only applies to North Carolina residents, and Wiener lives in Connecticut.

The district court concluded that it lacked subject-matter jurisdiction and dismissed the case. While the court noted that the parties had not disputed that North Carolina law governed as the case proceeded through trial, the court undertook a choice-of-law analysis *sua sponte* based on the possibility that Connecticut law applied. It held that Connecticut law applied because the North Carolina choice-of-law inquiry looks to the place of injury, and Wiener's injury—his inability to procure life insurance—occurred in his home state of Connecticut. The court then determined that *Connecticut*'s Insurance Information and Privacy Protection Act (CIIPPA) provided exclusive statutory remedies for AXA's reporting of inaccurate MIB codes and thereby deprived the court of subject-matter jurisdiction over Wiener's common-law negligence claim. So the court dismissed the case for lack of jurisdiction without reaching AXA's remaining arguments.

Wiener timely appealed.

## II.

We review de novo a district court's dismissal for lack of subject-matter jurisdiction. *See Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012).

At the outset, we note that there is no dispute that Wiener and AXA satisfy the statutory requirements for federal diversity jurisdiction under 28 U.S.C. § 1332. Wiener is a citizen of Connecticut, AXA is a citizen of New York, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

5

Moreover, while AXA argues that the choice of Connecticut law made no difference in this case, it is clear that the district court's decision to apply Connecticut's law instead of North Carolina's was determinative. AXA claims that North Carolina has a Consumer and Customer Information Privacy Act that, like the Connecticut statute, would preempt Wiener's negligence claim. But the North Carolina statute applies only to "persons who are residents" of North Carolina. N.C. Gen. Stat. § 58-39-10(b)(1). Because Wiener has never been a resident of North Carolina, the North Carolina CCIPA would not preempt his negligence claim. So the district court's dismissal of Wiener's case depended on the court's decision to apply Connecticut law.

We must therefore determine whether the district court erred in dismissing for lack of subject-matter jurisdiction based on its choice of Connecticut law. We conclude that choice of law is waivable, not jurisdictional, and AXA waived the possible application of Connecticut law by affirmatively litigating under the substantive law of North Carolina. It was therefore error for the district court to apply Connecticut law. And even assuming *arguendo* that it was proper for the court to apply Connecticut law, that law would not have ousted its subject-matter jurisdiction.

## A.

"All U.S. Courts of Appeals to have addressed the issue have held that choice of law issues may be waived." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014); *see, e.g.*, *P.R. Hosp. Supply, Inc. v. Bos. Sci. Corp.*, 426 F.3d 503, 505–06 (1st Cir. 2005); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 349 (2d Cir. 2003); *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) (per curiam); *Meridia Prods. Liab. Litig.*

6

*v. Abbott Labs.*, 447 F.3d 861, 865 (6th Cir. 2006); *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012); *P&O Nedlloyd, Ltd. v. Sanderson Farms, Inc.*, 462 F.3d 1015, 1017 n.3 (8th Cir. 2006); *Johnson v. Armored Transp. of Cal., Inc.*, 813 F.2d 1041, 1044 (9th Cir. 1987); *Mauldin v. Worldcom, Inc.,* 263 F.3d 1205, 1211–12 (10th Cir. 2001); *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 739 n.15 (11th Cir. 1995); *Jannenga v. Nationwide Life Ins. Co.*, 288 F.2d 169, 172 (D.C. Cir. 1961); *Waner v. Ford Motor Co.*, 331 F.3d 851, 856 n.2 (Fed. Cir. 2003).

This court is no exception. In *Bilancia*, we noted that the "failure of the plaintiffs to object at any time during trial or to except to the charge as required under [Federal Rule of Civil Procedure] 51 waived any right on their part to complain that the action was improperly submitted as one controlled by Virginia law." *Bilancia v. Gen. Motors Corp.*, 538 F.2d 621, 623 (4th Cir. 1976). Under *Bilancia*, choice of law is waivable, not jurisdictional.

This rule makes sense in light of Supreme Court precedent and the consequences of labeling issues as jurisdictional. Jurisdictional requirements are, of course, important: They "mark the bounds of a court's adjudicatory authority" and as such "cannot be waived or forfeited" and "must be raised by courts *sua sponte*." *Boechler, P.C. v. Comm'r*, 142 S. Ct. 1493, 1497 (2022) (quotation marks omitted). But given that jurisdictional objections can be raised at any time and may "result in the waste of judicial resources" and "unfairly prejudice litigants," the Supreme Court has "tried in recent cases to bring some discipline to the use of" the jurisdictional label. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434–35 (2011). Thus the Court has "urged" that an issue "should not be referred to as

7

jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Id.* at 435; *see also Boechler*, 142 S. Ct. at 1497 ("[W]e treat a procedural requirement as jurisdictional only if Congress 'clearly states' that it is." (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006)).

Holding that choice of law is jurisdictional would engraft an additional requirement onto the statutory prerequisites for diversity jurisdiction that Congress delineated in 28 U.S.C. § 1332: It would not be enough for federal subject-matter jurisdiction that the parties are diverse and have an amount in controversy greater than $75,000. Rather, a federal court would only have jurisdiction if the litigation were conducted under the correct state's substantive law. To hold as such would defy the Supreme Court's attempts to bring "discipline" to the "jurisdictional" label. *Henderson*, 562 U.S. at 435; *see Boechler*, 142 S. Ct. at 1497.

Moreover, labeling choice-of-law issues jurisdictional would have precisely the negative consequences that the Supreme Court has identified. Choice of law is typically debated by the parties during the course of litigation—for instance, in competing motions for summary judgment or proposed jury instructions—much like an affirmative defense. If choice of law were jurisdictional, a party could refrain from objecting to its adversary's choice of law, litigate the entire case based on that law, and then move to dismiss the case after trial if it loses before the jury. The resulting "waste of judicial resources" and "unfair[] prejudice" to litigants is obvious. *Henderson*, 562 U.S. at 434. In short, holding that choice of law is jurisdictional would create the perfect conditions for sandbagging.

8

Thus we reaffirm our conclusion in *Bilancia* that choice of law is not jurisdictional. A party abandons any claim that a different state's law should govern the action if it fails to raise that issue before or during trial.

B.

AXA waived any contention that this action should have been governed by Connecticut law. So the district court erred when it applied that law.

AXA litigated this entire case under the substantive law of North Carolina. AXA's answer, motion for summary judgment, trial brief, proposed jury instructions, and post-trial motion to dismiss all either assumed North Carolina law applied or explicitly cited North Carolina law as governing. As the district court noted, "the parties did not dispute that North Carolina law governed this negligence claim" prior to post-trial filings. *Wiener v. AXA Equitable Life Ins. Co.*, No. 3:18-cv-00106-RJC-DSC, 2021 WL 665112, at *3 (W.D.N.C. Feb. 19, 2021). Even AXA's memorandum of law supporting its post-trial motion to dismiss asked the court to apply North Carolina law. *See* Dkt. Entry 131 at 7 ("The controlling statute here is the North Carolina Consumer and Customer Information Privacy Act, N.C. Gen. Stat. §§ 58-39-5 to -165."). AXA did not suggest that Connecticut law might apply until its reply to Wiener's response to its post-trial motion to dismiss. *See* Dkt. Entry 140 at 4 (arguing that Connecticut law would be as fatal to Wiener's claim as North Carolina law).

AXA's failure to object to the application of North Carolina law and affirmative invocations of that law constitute, for all relevant purposes, a waiver of any argument that another state's law should be applied. On appeal, AXA disputes this conclusion based on

9

the technical distinction between waiver and forfeiture: "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

While this distinction is relevant, for example, in the context of Federal Rule of Criminal Procedure 52(b), *see id.* at 732–33, it makes no difference here. First, "jurists often use the words interchangeably." *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004). In fact, in *Bilancia*, we said that a party's mere failure to object "waived" choice of law. 538 F.3d at 623. Second, insofar as waiver is distinguished from forfeiture based on the degree of intentionality involved, we find that AXA's repeated requests for the district court to apply North Carolina law fall closer to the waiver end of the spectrum. AXA did not just fail to timely object to North Carolina law; it affirmatively asked the court to apply that law by, *inter alia*, proposing jury instructions that quoted and cited North Carolina law, *see* J.A. 245–47, and arguing to the court in its post-trial motions that a North Carolina statute is "controlling," Dkt. Entry 131 at 7.

Because both parties consented to the choice of North Carolina law to govern this action and AXA waived any argument that another state's law should be applied, the district court erred when it engaged in its own choice-of-law analysis and decided to apply Connecticut law.[1] As the Second Circuit has recognized, "where the parties have agreed to

---

[1] We reject AXA's suggestion that Wiener invited the district court to apply Connecticut law. Wiener discussed Connecticut's CIIPPA in his response to AXA's post-trial motion in order to explain how North Carolina's analogous statute operates. *See* J.A. 963–64. He did not request that the court throw out his jury verdict and apply Connecticut law instead.

the application of the forum [state's] law, their consent concludes the choice of law inquiry." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). "Where neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law." *Echo, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995).

The district court erred when it applied Connecticut law despite AXA's waiver because "it is inappropriate for the trial court to dispose of [a] case sua sponte on an objection . . . which would be waived if not raised by the defendant(s) in a timely manner." *Sinwell v. Shapp*, 536 F.2d 15, 19 (3d Cir. 1976). In the analogous context of waivable statute-of-limitations defenses, we have explained that "defense[s] waivable by the inaction of a party" are "hallmarks of our adversarial system of justice, a system in which the parties are obliged to present facts and legal arguments before a neutral and relatively passive decision-maker." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 654 (4th Cir. 2006). In other words, our adversarial system and "the benefits derived from adhering to the adversarial process" generally require that courts not revive waived issues. *Id.* at 655. "[T]rial courts must be cautious about raising" waived issues *sua sponte* lest they "erod[e] the principle of party presentation so basic to our system of adjudication." *Arizona v. California*, 530 U.S. 392, 412–13 (2000).

The district court should not therefore have raised and considered the waived choice-of-law issue *sua sponte*. There were no "special circumstances," *Arizona*, 530 U.S. at 412, that would "justif[y] our departure from the general rule" that courts should not

11

consider waived issues, *Eriline*, 440 F.3d at 657. Therefore, the district court's decision to apply Connecticut law despite AXA's waiver "constitutes an error of law." *Id.*

C.

Even assuming *arguendo* that it was proper for the district court to apply Connecticut law, the court was wrong to conclude that the Connecticut Insurance Information and Privacy Protection Act defeats federal jurisdiction. It is true that when a statute designates an exclusive non-judicial forum for a category of claim, it divests courts of jurisdiction over those claims. *See Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 390–91 (1986) (explaining that because the National Labor Relations Act places cases within the "exclusive domain of the National Labor Relations Board," it governs choice of forum and divests courts of jurisdiction). But when a statute provides for exclusive remedies *without* stripping courts of their adjudicatory powers, it "affects only the choice of law" and does not oust jurisdiction. *Saks*, 316 F.3d at 349.

*Davis* held that "when a state proceeding or regulation is claimed to be pre-empted by the NLRA . . . the issue is a choice-of-forum rather than a choice-of-law question." 476 U.S. at 391. Choice-of-forum preemption extinguishes jurisdiction because it affects courts' "actual adjudicatory . . . power." *Id.* at 391 & n.9. The same is not true of "pre-emption claims generally," which affect only the "substantive laws" governing the action. *Id.* at 391 n.9. Thus, *Davis* "made clear that preemption issues that dictate the choice of forum are jurisdictional and therefore may not be waived, but expressly stated that this rule does not extend to preemption issues that affect the parties' choice of law." *Saks*, 316 F.3d at 349 (describing ERISA preemption as a non-jurisdictional choice-of-law issue); *accord*

12

*Violette v. Smith & Nephew Dyonics, Inc.*, 62 F.3d 8, 11–12 (1st Cir. 1995) (noting that under *Davis*, when "the question is whether state tort or federal statutory law controls, preemption is not jurisdictional and is subject to the ordinary rules of appellate adjudication, including timely presentment and waiver").

In support of its position that exclusive-remedies statutes defeat jurisdiction, AXA cites our decision in *Evans v. B.F. Perkins Co.*, 166 F.3d 642 (4th Cir. 1999). *Evans* held that because the plaintiff's sole remedy against his employer was pursuant to the Virginia Workers' Compensation Act, the district court properly dismissed his common-law action for lack of jurisdiction. *Id.* at 650. But *Evans* did not address the distinction between choice-of-forum and choice-of-law statutes, and the Virginia Workers' Compensation Act created an administrative forum for workers' compensation claims: the Virginia Workers' Compensation Commission. *See* Va. Code Ann. § 65.2-201(A); *see also Banks v. Va. Elec. & Power Co.*, No. 99-1392, 2000 WL 191851, at *2 (4th Cir. 2000) (explaining that "because the plaintiff was the statutory employee of the defendant," he was "limited to an action for workers' compensation benefits before the state's workers' compensation tribunal").

The Connecticut Insurance Information and Privacy Protection Act is different. It does not purport by its terms to strip the courts of their basic adjudicatory powers. Quite the contrary. The statute expressly contemplates that if an insurance company fails to comply with it, an aggrieved individual "may bring an action for equitable relief" or damages in court, and "the court may award costs and reasonable attorney's fees to the prevailing party." Conn. Gen. Stat. § 38a-995(a), (b), (c). Thus, courts have the power to

13

adjudicate claims covered by CIIPPA—they have *jurisdiction*—even if certain causes of action are preempted by that statute. CIIPPA does not affect the court's "actual adjudicatory or regulatory power as opposed to the State's substantive laws" and is therefore not jurisdictional. *Davis*, 476 U.S. at 391 n.9.

Because CIIPPA governs choice of law rather than choice of forum and does not divest courts of jurisdiction, any argument that CIIPPA barred Wiener's claim was "subject to the ordinary rules of . . . timely presentment and waiver." *Violette*, 62 F.3d at 11–12. As explained above, AXA waived any argument that CIIPPA preempted Wiener's claim by failing to raise it at any point before or during trial. So, even assuming *arguendo* that the district court was entitled to apply Connecticut law, it erred when it dismissed Wiener's negligence claim as preempted by CIIPPA.

### III.

AXA urges us to affirm the district court on the alternative ground that there was insufficient evidence of injury to support Wiener's negligence claim. AXA argues that Wiener's alleged injury was his categorical uninsurability but the evidence showed that Wiener received multiple offers of insurance.

We review challenges to the sufficiency of the evidence de novo. *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003). When the loser of a jury trial challenges the verdict under Federal Rule of Civil Procedure 50(b), "the question is whether a jury, viewing the evidence in the light most favorable to [the winning party], could have properly reached the conclusion reached by this jury." *Id.* (quotation marks

14

omitted). Because Wiener won at trial, all disputed facts must be construed in his favor and he must be given the benefit of all reasonable inferences. *See Konkel*, 165 F.3d at 279.

While the district court dismissed for lack of subject-matter jurisdiction without reaching AXA's sufficiency-of-the-evidence challenge, we exercise our "discretion" to resolve it rather than remand it. *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). Resolving rather than remanding this challenge is appropriate because "both parties had ample opportunity to develop facts pertaining to the issue" over the course of this litigation, "the issue is primarily a question of law," it "was briefed and argued on appeal," and, in our view, "the proper outcome is beyond doubt, rendering a remand pointless." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 105 (4th Cir. 2020) (listing factors we have considered in determining whether to resolve issues not decided below).

Wiener's negligence claim was that AXA's negligent reporting of false medical information about him to the MIB caused him to become uninsurable. Ample evidence supported the jury's verdict for Wiener.

First, AXA does not dispute the jury's finding that it was negligent. AXA's employees falsely reported to an information clearinghouse that Wiener suffered from four serious medical conditions. They relayed this incorrect and damaging information without even conducting basic inquiries—like consulting Wiener's primary care doctor or reviewing the follow-up tests in Wiener's medical records—to determine whether those diagnoses were accurate.

Second, Wiener presented evidence from which a reasonable jury could conclude that he became uninsurable. While AXA asserts that Wiener's theory of injury was that he

15

became "categorically" uninsurable, there is no evidence in the record that Wiener's proffered injury was "categorical" uninsurability. Wiener never argued that he became "categorically" uninsurable or uninsurable "at any price." Br. of Appellee at 3. Rather, in denying AXA's motion for summary judgment and allowing this case to proceed to trial, the district court concluded that "there is a genuine dispute of fact as to whether the MIB codes *effectively* rendered Plaintiff uninsurable or insurable *at a significantly increased cost*." J.A. 235 (emphasis added). We have no doubt that someone who could obtain a $16 million life insurance policy only by paying annual premiums of $15,999,999 can be considered uninsurable. A reasonable jury could conclude that someone is effectively "uninsurable" when he cannot obtain insurance at a reasonable price.

Wiener presented evidence that he became effectively uninsurable. Sanford Robbins, who was Wiener's insurance agent and had thirty-seven years of experience, testified about his unsuccessful efforts to obtain a replacement $16 million policy for Wiener at the standard rate, which is "the rate that a typical person would obtain if they were healthy." J.A. 1372. Out of eight insurance applications, six carriers declined coverage altogether while two made preliminary, revocable offers for a $10 million policy at double the standard rate—which would have cost Wiener an extra $400,000 per year. *Id.* at 1370–73. The jury could properly have concluded from this evidence that Wiener had become effectively uninsurable or uninsurable at a reasonable cost.

Finally, Wiener presented evidence showing that the erroneous MIB codes that AXA reported caused his uninsurability. An expert witness, Stephen Burgess, testified that life insurance companies look at MIB codes early in determining whether to begin the

16

underwriting process and would be deterred from starting the process if the applicant had MIB codes "of significant concern." *Id.* at 1582. He testified that one of the erroneous MIB codes that AXA reported would be a "hot button[]" and a "deal killer for an insurance company." *Id.* at 1581. And Wiener's agent, Robbins, testified that in speaking with insurance carriers whom he had contacted about Wiener's application, he "was told that the Medical Information Bureau file had a coding in it that created an underwriting issue," which would prevent carriers from issuing a policy at the standard rate. *Id.* at 1372.

In sum, we do not lightly disturb jury verdicts on the basis of insufficient evidence, and we will not do so for a challenge as insubstantial as AXA's. The able district judge conducted a well-run trial during which Wiener presented sufficient evidence from which a reasonable jury could conclude that AXA's negligent reporting of erroneous MIB codes caused him to be become effectively uninsurable. The jury properly performed its function when it resolved these disputed facts in Wiener's favor. AXA's contrary arguments lack merit, so we decline to affirm the district court's dismissal on this alternative ground.

IV.

The district court erred by applying Connecticut law despite both parties' choice to litigate under North Carolina law. It also erred by concluding that Connecticut's CIIPPA divested it of subject-matter jurisdiction despite that statute affecting only choice of law rather than choice of forum. AXA's alternative argument for affirmance based on the nature of Wiener's injury and its causation was thoroughly briefed and argued before us, and we find it to be without merit. But because AXA's argument for post-trial relief challenging the amount of damages, *see* J.A. 954, was neither raised nor briefed before this

17

court, we think the better course is to remand to the district court to consider that issue in

the first instance, *see Hillman v. IRS*, 263 F.3d 338, 343 (4th Cir. 2001).

*REVERSED AND REMANDED*