**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 24-1401**

─────────────

JULES GAUTIER, individually and on behalf of all others similarly situated,

> Plaintiff – Appellee,

v.

TAMS MANAGEMENT, INC.; PAY CAR MINING, INC.; BLUESTONE INDUSTRIES, INC.; BLUESTONE RESOURCES, INC.; BLUESTONE COAL CORPORATION,

> Defendants – Appellants.

─────────────

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley.  Frank W. Volk, Chief District Judge.  (5:20−cv−00165)

─────────────

Argued:  October 21, 2025                    Decided:  January 2, 2026

─────────────

Before DIAZ, Chief Judge, and THACKER and RUSHING, Circuit Judges.

─────────────

Affirmed by published opinion.  Chief Judge Diaz wrote the opinion, in which Judge Thacker and Judge Rushing joined.

─────────────

**ARGUED:**  Steven Robert Ruby, CAREY DOUGLAS KESSLER & RUBY PLLC, Charleston, West Virginia, for Appellants.  Samuel Brown Petsonk, PETSONK PLLC, Oak Hill, West Virginia, for Appellee.  **ON BRIEF:**  Raymond S. Franks II, CAREY DOUGLAS KESSLER & RUBY PLLC, Charleston, West Virginia, for Appellants.  Bren J. Pomponio, MOUNTAIN STATE JUSTICE, INC., Charleston, West Virginia, for Appellee.

─────────────

DIAZ, Chief Judge:

A jury found five mining companies liable under the Worker Adjustment and Retraining Notification Act (the "WARN Act") for not giving their employees notice before firing them. The companies now appeal the district court's denial of their renewed motion for judgment as a matter of law and alternative motion for a new trial. Because the jury had sufficient evidence to find the companies were a single employer and the court correctly instructed the jury about employment loss, we affirm.

## I.

The WARN Act "requires certain employers to provide notice to their employees of sudden, significant employment loss so that they [can] seek alternative employment and their communities [can] prepare for the economic disruption of a mass layoff." *Schmidt v. FCI Enters. LLC*, 3 F.4th 95, 101 (4th Cir. 2021) (citation modified). The Act states:

> An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . to each representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee.

29 U.S.C. §§ 2102(a), (a)(1).

Generally, the statute's "scope of liability . . . extends precisely to a company's own employees," but in "some instances distinct businesses may count as the same employer for purposes of the WARN Act." *Pennington v. Fluor Corp.*, 19 F.4th 589, 596 (4th Cir. 2021). That happens "where the operational differences between the . . . companies are

2

purely formal, so that for all intents and purposes the businesses really do operate as the same employer." *Id.*

An employer that violates the notice provision is liable to employees who suffered an "employment loss." 29 U.S.C. § 2104(a). Employment loss means:

> (A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period.

*Id.* § 2101(a)(6).

## II.

When the losing party challenges a jury verdict, we view the disputed facts in the light most favorable to the prevailing party. *See Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 784 (4th Cir. 2023) (*Wiener I*).

## A.

Coal miner Jules Gautier worked at the Burke Mountain Mine Complex until October 2019, when foreman Billy McClung told him the mine was "shut down" and "no longer in operation." J.A. 122, 133. Gautier understood his "job just was terminated." J.A. 134. He hadn't received notice.

Gautier filed a class action suit against five companies—Tams Management, Inc., Pay Car Mining, Inc., Bluestone Industries, Inc., Bluestone Resources, Inc., and Bluestone Coal Corporation—under the WARN Act. He alleged that the companies didn't provide their employees sufficient notice before firing them.

3

The district court certified the class. It then denied the parties' cross motions for summary judgment.

B.

The evidence at trial showed the following.

State business records confirmed that three of the companies—Tams Management, Pay Car Mining, and Bluestone Industries—had the same officers, and James Justice III ("Jay Justice") was the president of each. Two of the companies—Tams Management and Bluestone Industries—had the same directors, Jay and Jillean Justice. The companies also had the same local office address.

Gautier worked for Bluestone Industries, but Tams Management issued his paychecks. Gautier reported to Albert Grimmett, who in turn reported to Kenny Lambert. Lambert reported to Bluestone Industries' owners: Jay Justice and his father, Jim Justice. Jay and Jim Justice visited the mine three to four times per week, and Grimmett sought approval from Lambert or Jay Justice before making any mine operation decisions.

Grimmett worked for "[t]he Justice family," and Tams Management was "[l]ike a subsidiary of [Bluestone]." J.A. 214–15. Both Tams Management and Bluestone Industries paid Grimmett. He sometimes participated in daily conference calls about mine operations led by Jay Justice.

Patrick Graham served as the companies' Senior Vice President for Safety and Human Resources. In that role, he had hiring and firing authority. He testified that "there [was] an exchange of employees and machines back and forth to [the] various operations"

4

at the Burke Mountain complex and that some salaried mine managers were Bluestone Industries employees.  J.A. 240–41, 243.

Leslie Wells was the "Senior Payroll Coordinator" for the "Justice Companies." J.A. 248.  She maintained check history reports and verified that each report listed an employee's "department" within Bluestone, such as Tams Management or Pay Car Mining.

Ronald Matthews, another Burke Mountain miner, testified that Tams Management was the same as Bluestone and that the administrative office where miners applied for positions and submitted paperwork had "always [been] the same place" and "always been Bluestone."  J.A. 204.

Mine equipment operator Joshua Lilly worked for Bluestone, and Tams Management, "a subsidiary of the company," issued his paycheck.  J.A. 185.  Lilly worked throughout the mine depending on where "they needed equipment."  J.A. 187.

Burke Mountain miner Shawn Abner testified that he couldn't recall which entity employed him because "the company changed names so many times"—it "would go from Bluestone Energy back to Tams to Bluestone, Incorporated back to Tams."  J.A. 232, 234. According to Abner, Tams Management, Bluestone Industries, and Bluestone Coal were the "Justice Companies" and were "just flip-flopping the name of the company around." J.A. 234.

## C.

After the parties rested, the companies moved for judgment as a matter of law, contending that Gautier didn't produce sufficient evidence to prove that they were a single employer.  The district court denied the motion.

5

The district court then instructed the jury. One instruction concerned employment loss:

> If you find 50 or more of the [companies'] full-time employees at the Burke Mountain Mine Complex were not terminated from employment from October 14, 2019 through January 11th, 2020, Mr. Gautier next asks you to consider if 50 or more of the [companies'] full-time employees suffered a qualifying reduction in hours.

J.A. 342.

The jury found the companies liable under the WARN Act. It determined that the companies were a single employer. The jury also concluded that the employees suffered an employment loss because the companies terminated 50 or more employees and reduced 50 or more employees' hours. The district court entered judgment for Gautier.

## D.

Post-trial, the companies renewed their motion for judgment as a matter of law. In a footnote, the companies incorporated the argument made at the close of evidence—that there was insufficient evidence to show they were a single employer. In another footnote, the companies incorporated their original motion for judgment as a matter of law. The renewed motion didn't otherwise address the single employer issue.

Alternatively, the companies sought a new trial, arguing that the district court improperly instructed the jury about employment loss, which led to an irreconcilable jury verdict.

The district court denied relief. This appeal followed.

6

III.

We begin with whether the companies forfeited their insufficient evidence argument.

A losing party "may only mount a sufficiency-of-the-evidence appeal to a jury verdict after first doing so in a Rule 50(b) motion before the district court." *Wiener v. AXA Equitable Life Ins. Co.*, 153 F.4th 413, 422 (4th Cir. 2025) (*Wiener II*). "[A] party does not go far enough by raising a non-specific objection or claim," and it "must press and not merely intimate the argument during the proceedings before the district court." *In re Under Seal, 749 F.3d 276, 287 (4th Cir. 2014)* (quoting *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 773 F.3d 148, 157 (5th Cir. 2013)). This rule ensures the lower court is "on notice as to the substance of the issue." *Id.* at 288 (quoting *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000)).

At the close of the evidence, the companies argued that Gautier hadn't shown that they were one employer. But in their post-trial motion, the companies merely referenced the argument in two cursory footnotes and didn't develop it. To its credit, the district court spotted and addressed the issue.

It's a close call, but we decline to find forfeiture under these facts. To preserve an issue for appeal, we expect far more from litigants than threadbare references to an issue or wholesale incorporation of earlier arguments by footnote. "Judges are not like pigs, hunting for truffles buried in the record," *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (citation modified), and clear, developed advocacy below helps illuminate and refine issues for appeal.

7

But because the district court addressed the companies' argument, we aren't concerned that it lacked sufficient notice or that we lost the benefit of its analysis.

IV.

On to the merits.

"We review challenges to the sufficiency of the evidence de novo," *Wiener I*, 58 F.4th at 784, "[b]ut we do so with deference towards the jury's findings." *Burgess v. Goldstein*, 997 F.3d 541, 549 (4th Cir. 2021). When the losing party at trial challenges the verdict, "the question is whether a jury, viewing the evidence in the light most favorable to the winning party, could have properly reached the conclusion reached by this jury." *Wiener I*, 58 F.4th at 784 (citation modified). We uphold "the jury's verdict unless the only conclusion a reasonable jury could have reached is one in favor of the moving party." *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023) (citation modified).

To determine whether the companies were one employer for purposes of the WARN Act, we rely on a multi-factor framework to assess "the degree of their independence." 20 C.F.R. § 639.3(a)(2); *see Pennington*, 19 F.4th at 597. "Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." 20 C.F.R. § 639.3(a)(2).

But these aren't exclusive, and no factor is dispositive.

8

A.

The companies contend that Gautier didn't introduce enough evidence to prove they were one employer. They maintain that much of the evidence "lacks probative value" or doesn't pertain to Tams Management specifically. Appellants' Br. at 24–25.

Not so. Gautier introduced multiple pieces of evidence that cumulatively gave the jury enough to conclude that the companies, including Tams Management, lacked independence and functionally operated as the same employer. Gautier presented evidence in support of each *Pennington* factor.

The jury had evidence of common ownership, directors, and officers. State business records showed common directors and officers between Tams Management and some of the companies, including Bluestone Industries: Justice family members served as president and directors of those companies. Multiple employees stated that Jay and Jim Justice owned the companies or they worked for the Justice Companies or the Justice family.

Gautier also presented evidence showing de facto exercise of control. Jay and Jim Justice frequently visited the mine; Jay Justice regularly led conference calls about mine operations; and staff sought the Justices' approval for operational decisions.

Salaried managers were Bluestone Industries employees, and they supervised miners paid by the other companies, including Tams Management. A Bluestone Industries manager informed miners paid by Tams Management about the mine's closure. Several employees, including managers, testified that Tams Management was a subsidiary or department of Bluestone.

9

The jury also heard evidence showing common personnel policies and operations. The companies' senior human resources officer testified that the companies exchanged employees and machines, which employees corroborated. The companies shared a common payroll system. The state business records showed that Tams Management had the same business address as Bluestone Industries. And one longtime employee testified that individuals applied for mining jobs at the same place, Bluestone.

Our analysis isn't restricted to the *Pennington* factors. *See* 20 C.F.R. § 639.3(a)(2) (listing "[s]ome of the factors to be considered"). Multiple employees testified that they worked generally for the Justices. One longtime employee testified that he didn't know which entity he worked for because "the company changed names so many times" and was "just flip-flopping [its] name . . . around." J.A. 232, 234. The employees' uncertainty and confusion provided additional evidence that in effect the companies operated as the same employer.

The district court was correct that the jury had enough evidence to so hold.

## B.

Next, we address the companies' argument that affirming the jury's verdict would alter our precedent.

The companies maintain that "[t]he judgment below appears to have been the first time in the 36-year history of the WARN Act . . . to impose indirect liability under the statute on an independent contractor, as opposed to a subsidiary." Reply Br. at 1. They contend that "the cases where courts have imposed single-employer liability have generally involved the parent companies of wholly owned or closely held subsidiaries" or "certain

10

lender-borrower relationships." *Id.* (quoting *Pennington*, 19 F.4th at 597, 599). Neither, they say, is present here.

The companies are right that "[i]n the WARN Act context, courts have found direct liability only in two circumstances" and that such cases "generally involve[]" parent-subsidiary relationships. *Pennington*, 19 F.4th at 597, 599. But we've never held that liability isn't appropriate in other circumstances, and at oral argument, the companies conceded that our precedent doesn't foreclose liability.

We also reject the companies' concern that affirming this verdict would expand WARN Act liability by permitting plaintiffs to rely exclusively on employees' subjective impressions. That's not what occurred here. Gautier introduced multiple forms of evidence, including state business records, company payroll records, and senior officer deposition testimony.

*Pennington* doesn't support disturbing the jury's verdict. In that case, "there was no common ownership," the entities didn't share any directors or officers, and each company was "responsible for hiring, firing, and paying their own personnel" and for making their own operational decisions. *Id.* at 597. None are true here.

In short, the jury's verdict doesn't change our precedent or the legal requirements necessary to prove single employer status under the WARN Act.

## V.

### A.

We turn to the companies' request for a new trial to remedy a purportedly erroneous jury instruction.

11

"We review challenges to jury instructions for abuse of discretion, bearing in mind that a trial court has broad discretion in framing its instructions to a jury." *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 233 (4th Cir. 2016) (citation modified). "We review de novo whether the district court's instructions to the jury were correct statements of law." *Id.* (citation modified). We only order a new trial if the district court erroneously instructed the jury and that instruction seriously prejudiced the moving party. *Id.*

## B.

The companies contend that the district court erred in instructing the jury about the WARN Act's employment loss categories. They maintain that the three categories are "mutually exclusive" and that the jury should have "[d]ecid[ed] which of the three actually occurred." Appellants' Br. at 27–28. Because the jury found that some employees suffered more than one type of employment loss, the companies argue, the court's instruction was erroneous.

That's incorrect. In fact, the case on which the companies rely, *Leeper v. Hamilton Cnty. Coal, LLC*, 939 F.3d 866 (7th Cir. 2019), shows that the district court correctly instructed the jury to consider the employment loss categories independently and alternatively. In *Leeper,* our sister circuit explained that "Congress specified three separate and distinct categories of employment action in § 2101(a)(6)" and that courts "must respect the choice embodied by that statutory structure." *Id.* at 869; *see* 29 U.S.C. § 2101(a)(6).

That reading makes good sense. Indeed, Congress chose to separate the three employment loss categories with the word "or," which is "almost always disjunctive, and

12

is generally used to indicate an alternative." *Campos-Chaves v. Garland*, 602 U.S. 447, 457 (2024) (citation modified).

The companies hint at the notion that the jury verdict is inconsistent. Why? Because the jury found "*both* that 50 or more of the 91 affected employees had been terminated, *and* that 50 or more of the same group had suffered a reduction in hours." Reply Br. at 11. This outcome is inconsistent, they say, because it's "not possible for 91 persons to sustain 100 injuries, when none could legally suffer more than one." *Id.*

Generally, "the proper remedy for an inconsistent jury verdict is a new trial." *Talkington v. Atria Reclamelucifers Fabrieken BV*, 152 F.3d 254, 261 (4th Cir. 1998). But "failure to bring any purported inconsistencies in the jury's verdict to the attention of the court prior to the release of the jury will constitute a [forfeiture] of a party's right to seek a new trial." *White v. Celotex Corp.*, 878 F.2d 144, 146 (4th Cir. 1989).

When asked at oral argument whether they preserved their inconsistent jury verdict claim, the companies said they had by objecting to the jury instruction about employment loss at trial. But they conflate their erroneous jury instruction and inconsistent jury verdict arguments. The record shows the companies forfeited the latter.

The companies didn't object to the jury verdict after the district court read it. So they forfeited their right to request a new trial on that ground. And they can't now revive the argument by recasting it as a problem with the jury instructions.

13

\* \* \*

Viewing the facts in the light most favorable to Gautier, the jury had sufficient evidence to find that the companies were a single employer under the WARN Act.  And the district court's jury instruction about employment loss was proper.

The district court's judgment is therefore

*AFFIRMED.*