ERNEST DAVIDSON, DARLENE DAVIDSON, Individu- ally and as Guardians ad Litem of SHERENE DAVIDSON and ERNEST DAVIDSON, JR., Their Minor Children, Appellants, v. VELSICOL CHEMI- CAL CORPORATION, an Illinois Corporation, Respondent.

No. 22464

August 12, 1992                                    834 P.2d 931

[Rehearing denied November 3, 1992]

*Johns & Johns,* Las Vegas, for Appellants.

*Jolley, Urga, Wirth & Woodbury,* Las Vegas; and *Spriggs & Hollingsworth,* Washington, D.C., for Respondent.

*Crockett & Myers,* Las Vegas; *Baron & Budd* and *Charles S. Siegel,* Dallas, Texas; and *Arthur Bryant* and *Priscilla Budeiri,* Washington, D.C., for Amicus Curiae Trial Lawyers for Public Justice.

[2]The Honorable Bob Miller, Governor, designated The Honorable James A. Stone, District Judge of the Second Judicial District, to sit in this case in the place of The Honorable Cliff Young, Justice, who voluntarily dis- qualified himself. Nev. Const., art. 6, § 4.

*Cory, MacDonald & Van,* Las Vegas, for National Pest Control Association.

## OPINION

*Per Curiam:*

The main issue presented by this appeal is whether the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq.* ("FIFRA"), pre-empts state common law actions against the manufacturers of pesticides based on failure to adequately label the pesticides. For the reasons set forth below, we conclude that FIFRA impliedly pre-empts such tort claims.

## FACTS

In March of 1986, appellants ("the Davidsons") filed suit against respondent Velsicol Chemical Corporation ("Velsicol"). The Davidsons alleged that in 1979, Bill Beckmeyer's Pest-A-Way ("Pestaway") applied Gold Crest Termide, a termiticide produced by Velsicol, to their partially constructed home. Pestaway sprayed, by a method called "broadcast spraying," the ground in an area intended for the home's crawl space.[1] By broadcast spraying, toxic chemicals allegedly migrated into the Davidsons' home.

The Davidsons claimed that Velsicol failed to give adequate warning and appropriate instructions concerning the application of its product to the foundation of newly constructed residences, namely, that broadcast spraying was inappropriate. They further claimed that as a result, they were exposed to harmful quantities of chemicals contained in Gold Crest Termide and suffered personal injuries. The Davidsons sought compensatory and punitive damages based on failure to warn, negligence and strict liability.

In 1980, after Pestaway had sprayed the Davidsons' home, Velsicol changed its label to provide a strict prohibition against broadcast spraying areas designated for crawl spaces. The Davidsons moved *in limine* for a ruling that the post-accident label change on Velsicol's Gold Crest Termide be admissible at trial. Velsicol countered *in limine,* seeking a ruling that FIFRA pre-empted state tort claims based on a failure to adequately label or warn and that the evidence of subsequent remedial measures was inadmissible.

The district court ruled that FIFRA impliedly pre-empts state common law tort suits against "manufacturers of Environmental Protection Agency ("EPA")-registered pesticides to the extent that such actions are based on claims of inadequate labeling." The district court also ruled that the evidence of the subsequent remedial measures was inadmissible.

## DISCUSSION

Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws which are contrary to, or which interfere with, the laws of Congress are invalid. Wisconsin Public Intervenor v. Mortier, 111 S.Ct. 2476, 2481 (1991) (citing Gibbons v. Ogden, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824)). "If Congress evidences an intent to

---

[1] The Davidsons contrast broadcast spraying to "rodding and trenching." Broadcast is defined as "[c]ast abroad or all over an area, as seed sown thus rather than in drills or rows." The Living Webster Encyclopedic Dictionary 124 (1975).

occupy a given field, any state law falling within that field is pre-empted." Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248 (1984). This intent may be either expressed in the terms of the statute or implied. *Mortier*, 111 S.Ct. at 2481. Where Congress has expressly provided for pre-emption, resort to the implied pre-emption doctrines is unnecessary; instead, the court need only determine the scope of the pre-emption. Cipollone v. Liggett Group, Inc., 60 U.S.L.W. 4703, 4707 (U.S. June 24, 1992).

In determining whether state law is pre-empted, courts must presume that the historic police powers of the states are not to be superseded by the Federal Act unless that is the clear and manifest purpose of Congress. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). Tort remedies which compensate for personal injuries are traditionally considered properly within the scope of state superintendence. Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 144 (1963). The burden of establishing pre-emption is on the party seeking to give the statute such effect. *Silkwood*, 464 U.S. at 255.

The Davidsons argue that FIFRA does not pre-empt its inadequate labeling claims against Velsicol. They cite Ferebee v. Chevron Chemical Co., 736 F.2d 1529, 1539 (D.C.Cir. 1984), *cert. denied*, 469 U.S. 1062 (1985), wherein the United States Court of Appeals for the District of Columbia held that FIFRA does not pre-empt such tort claims.

Velsicol, in turn, argues that the district court properly found that FIFRA pre-empts the Davidsons' claims. Velsicol relies on Arkansas-Platte & Gulf v. Van Waters & Rogers, 959 F.2d 158 (10th Cir. 1992), where the United States Court of Appeals for the Tenth Circuit held that state damage actions based on labeling and failure to warn are impliedly pre-empted by FIFRA.[2]

---

[2]Velsicol also relies on Papas v. Upjohn Co., 926 F.2d 1019 (11th Cir. 1991). At the time of oral arguments in this case, a petition for writ of certiorari had been filed in *Papas*. See 59 U.S.L.W. 3825 (U.S. May 29, 1991) (No. 90-1837). However, since oral arguments, the United States Supreme Court issued a summary order granting certiorari, vacating the judgment and "remand[ing] to the United States Court of Appeals for the Eleventh Circuit for further consideration in light of Cipollone v. Liggett Group, Inc., [60 U.S.L.W. 4703 (U.S. June 24, 1992)]." *See* Papas v. Zoecon Corp., 60 U.S.L.W. 3878 (U.S. June 29, 1992).

*Cipollone* involved whether the Public Health Cigarette Smoking Act of 1969 or its 1965 predecessor, the Federal Cigarette Labeling and Advertising Act, pre-empted petitioner's common law claims against several cigarette manufacturers. *Cipollone*, 60 U.S.L.W. at 4704. *Cipollone* announced that if there is a determination of express pre-emption, it is not necessary to infer Congressional intent (through the application of the implied pre-emption doctrines). *Cipollone*, 60 U.S.L.W. at 4707.

The *Papas* court apparently contravened the pre-emption analysis set forth

There is a split of authority on this issue. *Ferebee* and *Arkansas-Platte* represent the two views, and we therefore confine our discussion to these cases.[3]

### I. *Congress did not expressly pre-empt state tort claims.*

Velsicol argues that FIFRA expressly pre-empts state tort claims which are based on failure to adequately label. FIFRA provides:

(a) In general
A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by [FIFRA].
(b) Uniformity
Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA].

7 U.S.C. § 136v(a)-(b). Based on this language, several courts have held that FIFRA expressly pre-empts state action regarding pesticide labeling. *See, e.g.,* Fitzgerald v. Mallinckrodt, Inc., 681 F.Supp. 404, 406 (E.D.Mich. 1987); and Kennan v. Dow Chemical Co., 717 F.Supp. 799, 807 (M.D.Fla. 1989) (preemption based on the express language and legislative history).

---

in *Cipollone* by failing to determine whether FIFRA expressly pre-empts state tort claims based on inadequate labeling. *See Papas,* 926 F.2d at 1024 ("[W]e admit to a little uncertainty and pass over the question of express preemption.") Our opinion is consonant with *Cipollone* in that we address implied pre-emption only after concluding that FIFRA does not expressly pre-empt such claims (as discussed below).

We do not find *Cipollone* instructive on whether FIFRA pre-empts the Davidsons' claims; thus, we decline to draw anything further from the Court's summary reconsideration order. Perhaps Justice Blackmun articulated it best in *Cipollone* when he stated: "I can only speculate as to the difficulty lower courts will encounter in attempting to implement the Court's decision." *Cipollone,* 60 U.S.L.W. at 4714 (Blackmun, J., concurring in part and dissenting in part).

[3]Federal district courts finding pre-emption include Hurt v. Dow Chemical Co., 759 F.Supp. 556 (E.D.Mo. 1990); Kennan v. Dow Chemical Co., 717 F.Supp. 799 (M.D.Fla. 1989); Fisher v. Chevron Chemical Co., 716 F.Supp. 1283 (W.D.Mo. 1989); Herr v. Carolina Log Bldgs., Inc., 771 F.Supp. 958 (S.D.Ind. 1989); Fitzgerald v. Mallinckrodt, Inc., 681 F.Supp. 404 (E.D.Mich. 1987).

Cases in which district courts found no pre-emption include Riden v. ICI Americas, Inc., 763 F.Supp. 1500 (W.D.Mo. 1991); Evenson v. Osmose Wood Preserving Inc., 760 F.Supp. 1345 (S.D.Ind. 1990); Stewart v. Ortho Consumer Products, No. 87-4252, 1991 WL 36129 (E.D.La. 1990); Cox v. Velsicol Chem. Corp., 704 F.Supp. 85 (E.D.Pa. 1989); Roberts v. Dow Chem. Co., 702 F.Supp. 195 (N.D.Ill. 1988).

However, the majority of courts held that FIFRA does not expressly pre-empt state action of pesticide labeling. *See, e.g., Ferebee*, 736 F.2d at 1542; Montana Pole & Treating Plant v. I.F. Laucks, 775 F.Supp. 1339, 1343 (D.Mont. 1991); Riden v. ICI Americas, Inc., 763 F.Supp. 1500, 1505 (W.D.Mo. 1991); Hurt v. Dow Chemical Co., 759 F.Supp. 556, 558-59 (E.D.Mo. 1990); Fisher v. Chevron Chemical Co., 716 F.Supp. 1283. 1286-87 (W.D.Mo. 1989).

We conclude that the majority's position is more persuasive. Although FIFRA provides that states shall not "impose or continue in effect" labeling requirements which differ from FIFRA, section 136v(b) makes no reference to the pre-emption of state common law remedies. Because Congress has expressly pre-empted common law in other pre-emption clauses, Congress' silence cannot be ignored—it is inimical to a finding of express pre-emption. *Riden*, 763 F.Supp. at 1505-06. Indeed, as stated by the New Jersey Supreme Court, courts should not strain to find pre-emption of state law:

> [O]ur federal system, with its high regard for the several States' powers of governance requires that judges not pre-empt state law lightly. . . . [W]hen the Supreme Court considers whether the Congress has preempted state law, "[a]ny indulgence in construction should be in favor of the States, because Congress can speak with drastic clarity whenever it chooses to assure full federal authority."

Dewey v. R.J. Reynolds Tobacco Co., 577 A.2d 1239, 1251 (N.J. 1990) (quoting in part Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 780 (1947)).[4] Therefore, we hold that FIFRA does not expressly pre-empt state tort actions against pesticide manufacturers based on failure to adequately warn or label.

II. *Congress implicitly intended to pre-empt state tort claims.*

The next question is whether Congress implicitly intended to pre-empt state tort claims. *Mortier*, 111 S.Ct. at 2481. Congress' intent may be implied if Congress occupies an entire field or if

---

[4]In the same fashion as Congress could have included a reference to pre-emption of state common law, Congress could have also included a "savings clause" expressly sheltering state common law as it did in the Occupational Safety and Health Act of 1970, 29 U.S.C. § 653(b)(4) (1982). *Fisher,* 716 F.Supp. at 1287, n.1. Thus, the lack of reference to state common law is important only because of the presumption against pre-emption. *Id.*

there is an actual conflict between state and federal law. *Arkansas-Platte*, 959 F.2d at 161.

A. *Congress occupies the entire field of pesticide labeling.*

Congress occupies an entire field if: (1) the federal regulation is so pervasive such that Congress left no room for the states to supplement it; (2) the federal act involves a field in which the federal interest completely dominates the field; or (3) if the goals sought or the obligations imposed by the federal law reveal a purpose to preclude state authority. *Mortier,* 111 S.Ct. at 2481-82.

The *Ferebee* court recognized that FIFRA does not allow states to directly impose additional labeling requirements. *Ferebee,* 736 F.2d at 1541. The court, however, reasoned that state action which has the effect of changing federal labeling requirements is permissible because it falls within the states' power to regulate the "sale or use" of pesticides authorized in § 136v(a). *Id.*

In contrast, the *Arkansas-Platte* court held that FIFRA impliedly pre-empted state tort actions, reasoning that the federal government occupies the entire field of regulating labels. *Arkansas-Platte,* 959 F.2d at 164. Our review of the legislative history and the federal regulations supports a ruling that Congress occupies the entire field of pesticide labeling regulation.

In 1947, Congress enacted FIFRA to replace the Insecticide Act of 1910. *Mortier,* 111 S.Ct. at 2479 (citing 61 Stat. 163). Originally, FIFRA "was primarily a licensing and labeling statute." *Id.* (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 991 (1984)). Increased environmental and safety concerns prompted Congress to comprehensively amend FIFRA in 1972. *Id.* (citing 86 Stat. 973). These amendments enhanced FIFRA's registration and labeling standards, and the EPA was granted increased enforcement authority. *Id.* at 2479-80. Thus the 1972 amendments converted FIFRA from a labeling law into a comprehensive regulatory statute. *Id.* (quoting *Ruckelshaus,* 467 U.S. at 991).

A House of Representatives' report on the 1972 amendments to FIFRA indicated the proposed authority of the states:

> The States are given prime responsibility for the certification and supervision of pesticide applicators. The Federal Government sets the program standards the States must meet. *State authority to change Federal labeling and packaging is completely preempted,* and State authority to further regulate "general use" pesticides is partially preempted.

H.R. Rep. No. 511, 92d Cong., 2d Sess. 1-2 (1972) (emphasis added). This report reiterated that:

> In dividing the responsibility between the States and the Federal Government for the management of an effective pesticide program, the Committee *has adopted language which is intended to completely preempt State authority in regard to labeling and packaging.*

*Id.* at 16 (emphasis added).

Moreover, in its report to the Senate, the Agriculture and Forestry Committee noted that section 136v(b) *"preempts* any state labeling or packaging requirements different from such requirements under the Act." S. Rep. No. 838, 92d Cong., 2d Sess. (1972) *reprinted in* 1972 U.S.C.C.A.N. 3993, 4021 (emphasis added); *see also,* S. Rep. No. 970, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4092, 4128 (the Commerce Committee also stated that § 136v(b) "pre-empts" any state labeling or packaging requirements).[5]

The 1972 Amendments added 7 U.S.C. § 136v. That section, captioned "Authority of the States," provided in part:

> (a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by [FIFRA].
> (b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA].

7 U.S.C. § 136v(a)-(b). In 1988, Congress added the title, "In general," to subsection (a) and added the title, "Uniformity," to subsection (b). Pub. L. No. 100-532, 102 Stat., 2654, 2682 (1988).

FIFRA precludes the EPA from authorizing the sale of a pesticide unless the product, as labelled, will not cause "unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(C). Such effects are defined as: "[A]ny unreasonable risk to man or the environment, taking into account the economical, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb). The label must be such that it is "likely to be read and understood by the ordinary individual

---

[5]House Report 10729, which ultimately was enacted as the 1972 amendments, was referred to two committees: (1) the Agriculture and Forestry Committee, and (2) the Commerce Committee. *See* S. Rep. No. 838, 92d Cong., 2d Sess. (1972), *reprinted in* 172 U.S.C.C.A.N. 3993; S. Rep. No. 970, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4092 (1972).

under customary conditions of purchase and use." 7 U.S.C. § 136(q)(1)(E).

The EPA cannot approve a pesticide unless it complies with FIFRA's requirements, as set forth in § 136a(c)(5), and the EPA's labeling requirements. 40 C.F.R. § 152.112(f). The EPA has extensively regulated pesticide labeling, *see generally* 40 C.F.R. § 156 (1991), and provides specific requirements for the contents of each label (including ingredient statements, warnings, and directions for use). 40 C.F.R. § 156.10(a)(1). The EPA details how warnings are to be presented and provides specific requirements for the content, placement, type, size and prominence of the warnings. 40 C.F.R. § 156.10(h).

Also, there must be a statement of practical treatment. 40 C.F.R. § 156.10(h)(1)(iii). If hazards exist to humans and domestic animals, precautionary statements are required which "indicat[e] the particular hazard, the route(s) of exposure and the precautions to be taken to avoid accident, injury or damage." 40 C.F.R. § 156.10(h)(2)(i)(A). Directions for use of the pesticide must be stated in terms which are easy to read and understand by the average person. 40 C.F.R. § 156.10(i)(1)(i). When followed, they must be sufficient to protect the public "from fraud and from personal injury." *Id.* If a pesticide manufacturer violates either the general requirements of FIFRA or the regulations promulgated by the EPA, the EPA will notify the United States Attorney General who, in turn, will institute criminal or civil proceedings against the violator. 7 U.S.C. § 136g(c)(1).[6]

We reject *Ferebee's* reading of FIFRA as it conflicts with the language and legislative history of the statute. First, the excerpts from the legislative history demonstrate that Congress intended section 136v(b) to "completely pre-empt" state authority to change federal labeling. *See, e.g.,* H.R. Rep. No. 511, 92d Cong., 2d Sess. 1-2 (1972). Second, it is unlikely that Congress would have designated federal control over labeling in section 136v(b) if it thought that the provision could be circumvented by state action authorized by § 136v(a). Third, federal regulation of pesticide labeling created by FIFRA is "so pervasive" and "so dominant" such that Congress left no room for the states to supplement it.[7]

---

[6]Among other things, FIFRA makes it unlawful to sell or distribute a pesticide that is not registered or to alter the EPA-approved composition of the product. 7 U.S.C. § 136j(a)(1)(A), (2)(M). In addition, it is unlawful to sell a misbranded pesticide. (See 7 U.S.C. § 136(q)(1) for a description of when a pesticide is misbranded.)

[7]Several courts have sidestepped this aspect to FIFRA by finding that FIFRA does not create a comprehensive scheme to pre-empt "all state law

Therefore, we hold that FIFRA occupies the entire field of pesticide labeling and implicitly pre-empts state tort claims based on failure to adequately label the pesticide.[8]

## B. *State tort claims conflict with FIFRA.*

The final question is whether state tort claims actually conflict with FIFRA. *Mortier,* 111 S.Ct. at 2482. There is an actual conflict when compliance with both state and federal law is physically impossible, or when a state law obstructs the accomplishment and execution of the full purposes and objectives of Congress. *Id.*

The *Ferebee* court concluded that tort damages did not create an actual conflict. *Ferebee,* 736 F.2d at 1542. The court reasoned that compliance with both FIFRA and state tort law was not impossible because the manufacturer can continue to use the EPA-approved label and can at the same time pay damages to successful tort plaintiffs; alternatively, the manufacturer can petition the EPA for a more comprehensive label. *Id.* This analysis has been identified as a "choice of reaction" analysis. *See, e.g., Hurt,* 759 F.Supp. at 559.

The *Ferebee* court also concluded that state common law did not stand as an obstacle to the accomplishment of FIFRA's purposes. The court stated that such a conflict would exist only if

---

claims." *See, e.g., Riden,* 763 F.Supp. at 1506. These courts have approached implied pre-emption too broadly. The dispositive question is whether FIFRA occupies the particular field of pesticide labeling. *See Mortier,* 111 S.Ct. at 2486 ("Whatever else FIFRA may supplant, it does not occupy the field of pesticide regulation in general or the area of local use permitting in particular.")

[8]This holding is strengthened by the recent United States Supreme Court's decision in *Mortier,* where the Court noted that the entire field of pesticide regulation was not pre-empted but, in dicta, emphasized that pesticide labeling was pre-empted. *Mortier,* 111 S.Ct. at 2486; *see also Arkansas-Platte,* 959 F.2d at 163. In *Mortier,* the Court stated:

In the first place, § 136v itself undercuts such an inference. The provision immediately following the statute's grant of regulatory authority to the States declares that "[s]uch State shall not impose or continue in effect any requirements for labeling and packaging in addition to or different from those required under" FIFRA. 7 U.S.C. § 136v(b). This language would be pure surplusage if Congress had intended to occupy the entire field of pesticide regulation. *Taking such pre-emption as the premise, § 136v(a) would thus grant States the authority to regulate the "sale or use" of pesticides while § 136v(b) would superfluously add that States did not have the authority to regulate "labeling or packaging," an addition that would have been doubly superfluous given FIFRA's historic focus on labeling to begin with.*

*Mortier,* 111 S.Ct. at 2486 (emphasis added).

FIFRA was an "affirmative subsidization" of the pesticide industry, not a regulatory statute directed at public safety. *Ferebee,* 736 F.2d at 1542-43.

In contrast, *Arkansas-Platte* held that jury awards of damages would result in a direct conflict with FIFRA. *Arkansas-Platte,* 959 F.2d at 164. We agree. By registering a pesticide, the EPA has determined that the labels are adequate to protect man and the environment because it does not pose "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." A jury determination that a pesticide labeling is inadequate directly conflicts with the EPA's determination that the label is adequate and, secondly, the EPA Administrator's determination that the risks to man and environment are outweighed by the beneficial aspects of the pesticide.

Furthermore, as noted in *Arkansas-Platte,* such state damage actions would hinder Congress' goal of reaching uniformity in pesticide labeling.[9] *Id.* at 162. If a jury determined that a label was inadequate, a manufacturer would have to change the label or risk additional suits for damages. These changes would destroy the uniformity sought by Congress because warning labels for that pesticide would not be based on the same criteria the EPA uses to establish warnings for all other pesticides.

Though a manufacturer could "physically" comply with both federal and state requirements as articulated in *Ferebee,* we reject *Ferebee's* "choice of reaction" analysis because such jury determinations would realistically force manufacturers to change their labels. "A business choice between paying damages and changing the label is only notional." *Id.* at 162. *Ferebee's* "choice of reaction" is more an articulation of semantics, rather than an articulation of actual choices. As one court stated:

> This "choice of reaction" seems akin to the free choice of coming up for air after being underwater. Once a jury has found a label inadequate under state law, and the manufacturer liable for damages for negligently employing it, it is unthinkable that any manufacturer would not immediately take steps to minimize its exposure to continued liability.

Palmer v. Liggett Group, Inc., 825 F.2d 620, 627-28 (1st Cir. 1987) (discussing the "choice of reaction" analysis under the Federal Cigarette Labeling and Advertising Act).

We conclude that a jury determination that a label is inadequate would directly conflict with the EPA's determination that the label

---

[9]In 1988, Congress amended this section without changing the language of § 136v(b) by adding the heading "Uniformity" to this section. Pub. L. 100-532, § 801(m) (1988).

is adequate to protect man and the environment. National uniformity in pesticide labeling would also be frustrated by state common law tort claims. Therefore, we hold that these tort claims are pre-empted because they "actually conflict" with FIFRA.

## CONCLUSION

In sum, we hold that FIFRA does not expressly pre-empt state tort claims based on inadequate labeling but that FIFRA impliedly pre-empts such claims. Our resolution of this issue makes it unnecessary for us to address the Davidsons' remaining contention. Accordingly, for the reasons stated above, we affirm the order of the district court.

MOWBRAY, C. J., SPRINGER, ROSE and YOUNG, JJ., and CARNAHAN, D. J.,[10] concur.