139 Nev., Advance Opinion 51

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| HIGHROLLER TRANSPORTATION, LLC, Appellant, vs. NEVADA TRANSPORTATION AUTHORITY, Respondent. | No. 85007-COA<br><br>**FILED**<br><br>NOV 30 2023<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY _____<br>CHIEF DEPUTY CLERK |

Appeal from a district court order granting in part and denying in part a petition for judicial review of an administrative decision by the Nevada Transportation Authority. Eighth Judicial District Court, Clark County; Eric Johnson, Judge.

*Affirmed.*

James S. Kent, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, and Louis V. Csoka, Deputy Attorney General, Carson City,
for Respondent.

_____

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

OPINION

By the Court, WESTBROOK, J.:

In this opinion, we consider for the first time the scope and application of the waiver rule to the adjudication of contested cases before

23-38810

the Nevada Transportation Authority (NTA or Authority). We also emphasize the importance of a developed record at the agency level to enable district courts and appellate courts to meaningfully address the arguments raised in petitions for judicial review.

The NTA administers and enforces Nevada's laws governing the transportation of persons and property on Nevada's roadways. *See* NRS 706.166. The Authority generally conducts its business at public hearings during open meetings of the NTA general session. *See* NRS 706.1514(2). However, in cases involving the imposition of civil penalties or fines, administrative proceedings may be conducted by a hearing officer designated by the Authority. NRS 706.1514(2); NRS 706.771. At the conclusion of such administrative proceedings, the hearing officer delivers the record of the hearing and a proposed decision to the Authority for its consideration. Nevada Administrative Code (NAC) 706.4015. The Authority then reviews the hearing officer's proposed decision and, at a meeting of the NTA general session, enters a final order affirming, modifying, or setting aside the decision. NAC 706.4017.

In contested cases before the NTA, we conclude that arguments not raised during the administrative proceedings are generally waived and that the NTA need not consider arguments raised for the first time at the general session. Moreover, when a party to a contested case before the NTA stipulates to informally dispose of the case and waive the findings of fact and conclusions of law otherwise required by NRS 233B.125, that party is bound by the terms of the stipulation and may not subsequently challenge the legal or factual underpinnings of the NTA's decision on judicial review. Accordingly, we affirm the district court's order granting in part and denying in part the petition for judicial review.

## FACTS AND PROCEDURAL HISTORY

In 2015, Highroller Transportation, LLC, obtained authorization to operate charter buses in Nevada when the NTA granted Highroller a certificate of public convenience and necessity. Under the terms of its certificate, Highroller was prohibited from "stag[ing] or stand[ing] a vehicle at any location except while currently chartered or awaiting a preexisting charter client." Highroller accepted this restriction as a condition of its right to operate and did not challenge it at any point prior to the instant case.

In December 2020, Highroller received an administrative citation for improperly staging a vehicle at a casino without a charter order in violation of its certificate restriction and NAC 706.360.[1] Three months after receiving this citation, Highroller was issued a second citation, also for improperly staging its vehicles without a charter order. At a subsequent administrative hearing on both citations, Highroller stipulated to the facts underlying each citation and agreed to fines totaling $10,000.[2] The parties then signed written stipulations waiving formal findings of fact and conclusions of law. Under the terms of these stipulations, "[t]he parties . . . [agreed] to dispose of the case[s] by stipulation . . . [and waived] the requirement under Nevada Revised Statute ('NRS') 233B.125 that the Authority's final order include findings of fact and conclusions of law." The stipulations further provided that "a final order will issue which includes,

---

[1]NAC 706.360 provides that "vehicles of an authorized carrier may not be used for transportation services beyond the scope of the authority of that carrier."

[2]The $10,000 amount was calculated as $1600 for the initial citation, $4400 for the second citation, and $4000 for a prior fine that had previously been held in abeyance.

generally: (1) The stipulations and admissions of the parties; (2) The [h]earing [o]fficer's recommendations to the Authority ... [;] and (3) An order from the Authority approving, modifying, or setting aside the [h]earing [o]fficer's recommendations." The hearing officer then submitted a proposed decision for review by the NTA, recommending that the NTA accept the stipulations and enter the fines against Highroller.

In June 2021, at the NTA's general session, the Authority addressed the hearing officer's proposed decision in Highroller's contested cases. The meeting agenda for this general session contained a total of 124 docket items, ranging from applications for driver permits, rate and tariff issues, and dozens of citations. At this meeting, Highroller, for the first time, objected to the NTA's legal authority to enter the violations and argued that the NTA's authority was preempted under federal law. Highroller posited that this argument was jurisdictional in nature and therefore could be raised at any time. The NTA declined to consider Highroller's federal preemption argument, noting that it should have been raised at the administrative hearing before the hearing officer. Thereafter, the NTA issued a final order affirming the hearing officer's proposed decision and formally imposing the $10,000 in fines.

Highroller then petitioned for judicial review in the district court. In its petition, Highroller argued that its certificate restriction, which formed the basis of the violations and fines, was federally preempted by 49 U.S.C. § 14501(a)(1)(C), and, as a result, the NTA did not have jurisdiction to find that Highroller was in violation of the restriction. Highroller specifically claimed that the restriction was preempted because the prohibition against staging was not a valid exercise of the NTA's safety regulatory authority; if the restriction were legitimately related to safety,

Highroller argued, it would uniformly apply to all commercial vehicle operators in the state or otherwise be codified as a law or regulation. In its answering brief, the NTA argued that Highroller's certificate restriction was a proper exercise of its authority to regulate safety because the purpose of the certificate's prohibition on staging was to ensure that large charter buses would not contribute to traffic congestion by parking or being left unattended in vehicle loading areas at resort properties. The NTA also referenced several other codified regulations containing prohibitions on similar conduct and argued that Highroller's certificate restriction was safety-related when viewed in the context of these other regulations.[3]

The district court agreed with the NTA's position and determined that the restriction in Highroller's certificate was related to safety and thus not federally preempted. The court denied Highroller's petition as to the federal preemption claim, and this appeal followed.[4]

---

[3]Specifically, the NTA referenced NAC 706.228 (prohibiting parking vehicles in close proximity to a taxi stand), NAC 706.234 (addressing the risk of unattended vehicles around resort properties), NAC 706.354 (requiring that charter orders be "[c]arried on the vehicle and be available for inspection during the period of the service"), and NAC 706.360 (stating that vehicles of an authorized carrier must not be used for services beyond the scope of the carrier's authority).

[4]The district court granted the petition in part because the NTA had levied duplicative fines against both Highroller and its employee personally for the same conduct. The district court reversed the NTA's order to the extent of any fines that had already been collected from Highroller's employee for the same "underlying events" as Highroller's contested citations. The NTA did not file a cross-appeal to challenge this portion of the district court's order.

*ANALYSIS*

Highroller does not dispute that its conduct violated the restriction in its certificate; rather, Highroller contends on appeal that the restriction is preempted by federal law and thus cannot form the basis for the violations in the NTA's final order. Similar to the argument presented in its petition for judicial review, Highroller argues that its certificate restriction is not related to safety because the NTA does not impose the restriction on all motor carriers, nor is the restriction codified as a uniformly applicable regulation. The NTA's "assertion" of safety in its answering brief on judicial review, Highroller claims, was insufficient to "provide any basis" or substantiate that the restriction pertains to safety, particularly given that there was no explanation of the restriction in 2015 when it was initially included in Highroller's certificate.

In response, the NTA argues that the restriction is related to safety because it was "designed to ensure public safety at the resort properties, by ensuring that the significantly larger charter buses are not whirling around clogging up *porte cocherers* next to resort properties, are not being left unattended around resort properties . . . , and not otherwise being used as taxicabs around resort properties." In addition, the NTA reiterates that Highroller's certificate restriction is safety-related when viewed in the context of similar administrative regulations.

The NTA argues in the alternative that Highroller waived its federal preemption argument by failing to raise it at the administrative hearing before the hearing officer and also by stipulating to informally dispose of its contested cases. As a result, the NTA contends that the safety purpose of the restriction was not fully briefed or argued at the agency level and, therefore, Highroller improperly argued preemption for the first time in its petition for judicial review.

When reviewing a decision of an administrative agency, this court's role "is identical to that of the district court: to review the evidence presented to the agency in order to determine whether the agency's decision was arbitrary or capricious and was thus an abuse of the agency's discretion." *United Exposition Serv. Co. v. State Indus. Ins. Sys.*, 109 Nev. 421, 423, 851 P.2d 423, 424 (1993). Appellate review of a final agency decision is "confined to the record before the agency." *Law Offices of Barry Levinson, P.C. v. Milko*, 124 Nev. 355, 362, 184 P.3d 378, 384 (2008). However, we review purely legal questions, including matters of statutory interpretation, de novo. *Id.* "Whether state law is preempted by a federal statute or regulation is a question of law, subject to our de novo review." *Nanopierce Techs., Inc. v. Depository Tr. & Clearing Corp.*, 123 Nev. 362, 370, 168 P.3d 73, 79 (2007) (footnote omitted).

The doctrine of preemption stems from the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2. When a conflict arises between a federal law and a state law, the federal law will supersede the conflicting state law. *Nanopierce Techs.*, 123 Nev. at 370, 168 P.3d at 79. Preemption may be express or implied. Congress expressly preempts state law when it *explicitly* states the intent to do so in the statute. *Id.* at 371, 168 P.3d at 79. To determine whether Congress has expressly preempted state law, courts "examine the statutory language—any explicit preemption language generally governs the extent of preemption." *Id.*

Because Highroller contends that 49 U.S.C. § 14501(a) expressly preempts the restriction contained in its certificate, we begin by examining the statutory text, which states, in pertinent part:

(a) Motor carriers of passengers.—

(1) Limitation on State law.—No State or political subdivision thereof and no interstate

agency or other political agency of 2 or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to—

. . .

> (C) the authority to provide intrastate or interstate charter bus transportation.

. . .

> (2) Matters not covered.—*Paragraph (1) shall not restrict the safety regulatory authority of a State with respect to motor vehicles*, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle, or the authority of a State to regulate carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

(Emphasis added.)

Although the plain language of this statute expressly preempts any state "law, rule, regulation, standard, or other provision" relating to "the authority to provide intrastate or interstate charter bus transportation," 49 U.S.C. § 14501(a)(1)(C), Congress provided that the preemption directive "shall not restrict the safety regulatory authority of a State with respect to motor vehicles," 49 U.S.C. § 14501(a)(2); *see also City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 428 (2002) (addressing 49 U.S.C. § 14501(c)(2)(A), which contains an identical safety preemption exception for motor carriers of property). Thus, the extent of federal preemption under § 14501(a) is limited, and it does not apply to

safety-related restrictions. *See Nanopierce Techs.*, 123 Nev. at 370, 168 P.3d at 79.

In this case, both Highroller and the NTA agree that § 14501(a) applies in this case, but as noted above, they dispute whether Highroller's certificate restriction falls under the NTA's valid safety regulatory authority, such that the restriction is excepted from preemption under § 14501(a)(2). Before we can reach the merits of Highroller's federal preemption claim, however, we must examine whether its preemption argument was properly preserved for appellate review.

*Arguments not raised to a hearing officer in a contested case before the NTA are generally waived*

Highroller raised its federal preemption argument for the first time at the NTA's general session, after all administrative hearings had concluded. Highroller contends that this was sufficient to properly preserve its preemption claim for judicial review. The NTA disagrees.

Arguments raised for the first time on appeal are typically deemed waived. *State ex rel. State Bd. of Equalization v. Barta*, 124 Nev. 612, 621, 188 P.3d 1092, 1098 (2008). In *Barta*, the Nevada Supreme Court extended the waiver rule to judicial review of administrative decisions and held that any arguments not made before an administrative agency are waived. *Id.* However, *Barta* did not clearly address *when* a party must raise an argument before an agency to properly preserve that argument for consideration on judicial review, and we take the opportunity to do so here, in cases arising before the NTA. Based on our review of the relevant statutes and administrative regulations, we conclude that arguments not presented to a hearing officer at an NTA administrative hearing are generally waived and may not be raised for the first time at the NTA's general session.

The Nevada Administrative Procedure Act (APA), codified in NRS Chapter 233B, provides that any agency proceeding that may result in the imposition of an administrative penalty is a "contested case." NRS 233B.032; *see also State, Dep't of Health & Human Servs., Div. of Pub. & Behav. Health Med. Marijuana Establishment Program v. Samantha Inc.*, 133 Nev. 809, 813, 407 P.3d 327, 330 (2017) ("[F]inal agency decisions from a proceeding requiring an opportunity for a hearing or imposing an administrative penalty are judicially reviewable contested cases."). In contested cases, all parties must be afforded an opportunity for a hearing. NRS 233B.121. Contested cases under the APA are quasi-judicial proceedings. *See Smith v. State, Bd. of Wildlife Comm'rs*, No. 77485, 2020 WL 1972791 at *3 (Nev. Apr. 23, 2020) (Order of Affirmance) (stating that contested cases under the APA are quasi-judicial in nature) (citing NRS 233B.032). As such, administrative hearings in contested cases have a "judicial character" and "maintain[ ] trial-like attributes." *State, ex rel. Bd. of Parole Comm'rs v. Morrow*, 127 Nev. 265, 272-73, 255 P.3d 224, 228-29 (2011).

The APA establishes the administrative hearing as an adversarial proceeding that affords an opportunity to contest the validity or grounds for the issuance of a penalty. In addition to the statutory requirements found in NRS Chapter 233B, the NAC contains supplemental requirements for administrative hearings before the NTA specifically. At such hearings, the hearing officer may hear testimony, NAC 706.3985, consider documentary evidence, NAC 706.3992, and make a variety of procedural rulings, *see* NAC 706.3996 (consolidating hearings); NAC 706.400 (briefs); NAC 706.4001 (oral arguments). Parties have the right to examine witnesses, NAC 706.3939, cross-examine opposing witnesses, NAC

706.3985, object to the admissibility of evidence, NAC 706.399, introduce evidence, offer arguments, and make motions, NAC 706.3939; *see also* NAC 706.3959 (authorizing parties to file motions, including motions to dismiss). All motions must be in writing unless made during a hearing. NAC 706.3959(2). Parties may stipulate to facts, and such stipulations are binding upon the parties and may be considered as evidence by the NTA. NAC 706.3997.

At the conclusion of an administrative hearing, the hearing officer is required to prepare a proposed decision for the NTA's review. NAC 706.4015(1)(f), (g). At that time, the matter stands "submitted for decision by the [NTA]," unless otherwise ordered by the hearing officer, NAC 706.4002, and only the hearing officer or the NTA may reopen the proceedings for the taking of additional evidence, NAC 706.4003; NAC 706.3994(2). The NTA then reviews the hearing officer's recommended decision and the administrative hearing record and enters a final order at an NTA general session affirming, modifying, or setting aside the recommendation. NAC 706.4017.

In quasi-judicial proceedings before an administrative hearing officer, waiver rules serve the same purpose as in traditional judicial proceedings: allowing a party to make arguments to which the opposing party has a chance to respond and the trier of fact has an opportunity to consider in an informed manner. *See Oliver v. Barrick Goldstrike Mines*, 111 Nev. 1338, 1344-45, 905 P.2d 168, 172 (1995) (stating that the purpose of the waiver rule "is to prevent appellants from raising new issues on appeal concerning which the prevailing party had no opportunity to respond and the district court had no chance to intelligently consider during the proceedings below"); *see also Valley Health Sys., LLC v. Eighth Judicial*

*Dist. Court*, 127 Nev. 167, 173, 252 P.3d 676, 680 (2011); *accord Landmark Hotel & Casino, Inc. v. Moore*, 104 Nev. 297, 299, 757 P.2d 361, 362 (1988) ("The purpose of the requirement that a party object to the action of the trial court at the time it is taken is to allow the trial court to rule intelligently and to give the opposing party the opportunity to respond to the objection.").

To permit judicial review of arguments not raised at an NTA administrative hearing would contravene the purpose of the waiver rule by allowing a party to make arguments to which the agency had no chance to respond and which the hearing officer had no opportunity to fully consider. *Oliver*, 111 Nev. at 1344-45, 905 P.2d at 172. In this case, Highroller raised its federal preemption argument for the first time at an NTA general session, after the conclusion of the administrative hearing and after the hearing officer had already issued his proposed decision. Thus, the NTA had no opportunity to respond during the hearing or present evidence of the restriction's safety-related purpose, which was necessary to evaluate Highroller's preemption argument. *Cf. Auto. Club of N.Y., Inc. v. Dykstra*, 423 F. Supp. 2d 279, 281, 285 (S.D.N.Y. 2006) (concluding that a state statute was preempted after evidence presented of the statute's purpose at a bench trial did not show that it was legitimately related to safety concerns). In addition, the hearing officer was unable to consider Highroller's claim in an informed manner, nor could he make any findings of fact as to the restriction's purpose or conclusions of law as to whether that restriction fell within the preemption exception for safety under 49 U.S.C. § 14501(a)(2). The NTA general session was neither the time nor the place to raise such arguments in the first instance.

We note that the rule prohibiting new arguments from being raised for the first time on appeal serves the additional purpose of ensuring

a proper record for appellate review. *Young v. State*, 139 Nev., Adv. Op. 20, 534 P.3d 158, 164 (Ct. App. 2023) (discussing generally the "importance of making timely objections to preserve the record in order to facilitate appellate review"). In other contexts, the Nevada Supreme Court has consistently required lower courts to make findings, either in writing or on the record, so it can evaluate the lower court's decision and the reasons underlying that decision. *See, e.g., Somee v. State*, 124 Nev. 434, 441-42, 187 P.3d 152, 158 (2008) (requiring the district court to make specific factual findings because "[w]ithout an adequate record, this court cannot review a district court's decision to admit or suppress evidence"); *Davis v. Ewalefo*, 131 Nev. 445, 452, 352 P.3d 1139, 1143 (2015) ("Specific findings and an adequate explanation of the reasons for the custody determination are crucial to enforce or modify a custody order and for appellate review. Without them, this court cannot say with assurance that the custody determination was made for appropriate legal reasons." (internal quotation marks and citation omitted)). The necessity of a fully developed record applies with no less force in administrative agency appeals, such as Highroller's, where appellate review is strictly confined to the agency record. *State Indus. Ins. Sys.*, 109 Nev. at 424, 851 P.2d at 424 (stating that the appellate court's review of an agency decision is limited to the agency record).

We also note that the hearing officer in a contested case before the NTA functions somewhat like a magistrate judge who conducts hearings and issues recommendations for review and approval by a district court judge. *See Valley Health*, 127 Nev. at 172, 252 P.3d at 679. In *Valley Health*, the Nevada Supreme Court recognized the similarities between federal magistrate judges and discovery commissioners, who both submit

proposed findings of fact and recommendations to the district court for approval, and held that principals of waiver apply to issues resolved in the first instance by a discovery commissioner. *Id.* The supreme court observed that it would lead to an "inefficient use of judicial resources" to allow parties to make "one set of arguments before the commissioner, waiting until the outcome is determined, then adding or switching to alternative arguments before the district court." *Id.* at 172-73, 252 P.3d at 679-80. The court concluded that neither the district court nor the appellate courts would "consider new arguments raised in objection to a discovery commissioner's report and recommendation that could have been raised before the discovery commissioner but were not." *Id.* at 173, 252 P.3d at 680.

We find the analysis of *Valley Health* instructive. Permitting parties to raise new arguments at an NTA general session, when those arguments could have been raised at an administrative hearing, would create inefficiency because the new arguments were never presented to or considered by a hearing officer in the first instance. While the NTA can certainly *choose* to reopen administrative proceedings after the conclusion of a contested hearing if it wishes to do so for the taking of additional evidence, *see* NAC 706.4003, it is not obligated to do so, NAC 706.4002 ("Unless otherwise specifically ordered, a matter stands submitted for decision by the Authority at the close of the hearing."). Thus, while the NTA has the discretion to consider an untimely argument raised for the first time at a general session, it may choose not to entertain it, and doing so is not an abuse of that discretion.

Nevertheless, while we hold that arguments must *generally* be raised at the administrative hearing before the NTA, we recognize that a party may raise subject matter jurisdiction at any time. *See Swan v. Swan,*

COURT OF APPEALS
OF
NEVADA

(O) 1947B

14

106 Nev. 464, 469, 796 P.2d 221, 224 (1990) (stating generally that subject matter jurisdiction "can be raised by the parties at any time"). Although Highroller has never *expressly* invoked subject matter jurisdiction, Highroller did argue at the NTA general session and in its petition for judicial review that, as a result of federal preemption, the NTA was without jurisdiction to adjudicate the citations or find that Highroller was in violation of its certificate restriction. Therefore, we must determine whether Highroller's brief statement at the NTA general session was sufficient to demonstrate that the NTA lacked subject matter jurisdiction over the citations at issue in this case as a result of federal preemption.

*Highroller did not establish that 49 U.S.C. § 14501(a)(1)(C) divested the NTA of subject matter jurisdiction in this case*

At the outset, we note that neither party on appeal briefed the issue of whether preemption under 49 U.S.C. § 14501(a) implicates the NTA's subject matter jurisdiction. In Highroller's petition for judicial review, while Highroller summarily asserted that the NTA was without authority to find it was in violation of its certificate restriction, Highroller did not clearly argue that federal preemption divested the NTA of subject matter jurisdiction such that its preemption claim could be raised at any time.[5] Nonetheless, because subject matter jurisdiction can be raised "sua sponte by a court of review," *Swan*, 106 Nev. at 469, 796 P.2d at 224, we address Highroller's preemption claim to the extent Highroller contends it

---

[5]Rather, Highroller argued before the district court that it had properly preserved its preemption argument by referencing preemption at the general session. In the alternative, Highroller asserted that if preemption was being raised for the first time on judicial review, the district court should nonetheless consider it because proper resolution was "beyond any doubt" and allowing the NTA's order to stand would be unjust, citing *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).

removes the NTA's subject matter jurisdiction to adjudicate Highroller's contested cases.

When federal preemption implicates the choice of law governing an action, it operates as an affirmative defense that may be waived. *See Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 381-82 (1986); *see also Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 779-80 (4th Cir. 2023) (stating that in the context of federal preemption, "[a]ll U.S. Courts of Appeals to have addressed the issue have held that choice of law issues may be waived"); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 349 (2d Cir. 2003) ("Where federal preemption affects only the choice of law, the defense may be waived if not timely raised."). However, a more limited subset of nonwaivable, jurisdictional federal preemption exists when the preemptive federal legislation vests subject matter jurisdiction "exclusively in one forum" and, in doing so, withdraws jurisdiction from all other forums. *Davis*, 476 U.S. at 393 nn.9 & 11. Federal preemption derived from choice-of-forum legislation "mark[s] the bounds of a [state] court's adjudicatory authority, and as such cannot be waived or forfeited." *Wiener*, 58 F.4th at 780 (internal quotation marks omitted).

In *Davis*, the United States Supreme Court considered whether *Garmon* preemption[6] under the National Labor Relations Act (NLRA), 29

---

[6]In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245-46 (1959), the Supreme Court held, as a general matter, that when union activities are "arguably within the compass of § 7 or § 8 of the [NLRA], the State's jurisdiction is displaced" or preempted, and "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." The Nevada Supreme Court addressed *Garmon* preemption in *Rosner v. Whittlesea Blue Cab Co.*, 104 Nev. 725, 766 P.2d 888 (1988), holding that a state law breach of contract action that did not

U.S.C. §§ 151-168, was an affirmative defense and thus subject to waiver, or choice-of-forum legislation and therefore nonwaivable. Following the conclusion of a trial in state court on Davis' wrongful termination claims, the union argued for the first time in a post-trial motion that the state court lacked subject matter jurisdiction to adjudicate Davis' claims due to federal preemption under the NLRA. 476 U.S. at 385. The state court held that the union had waived its preemption argument by failing to timely raise it until the conclusion of trial and declined to address it on the merits. *Id.* at 385-86. However, the Supreme Court disagreed, determining that, with certain exceptions, state courts lack subject matter jurisdiction to adjudicate claims raised under the NLRA because "in enacting the NLRA Congress intended for the [National Labor Relations] Board generally to exercise exclusive jurisdiction in this area." *Id.* at 391. In holding that the NLRA is a choice-of-forum statute because it vested exclusive jurisdiction in the National Labor Relations Board, the Supreme Court concluded that *Garmon* preemption was jurisdictional, and therefore the union did not waive its federal preemption argument by waiting to raise it until after the conclusion of the trial. *Id.*

Nonetheless, even while recognizing that *Garmon* preemption could not be waived, the Supreme Court ultimately concluded that the union did not meet its burden to establish jurisdictional preemption because its allegations of preemption were entirely conclusory in nature and not based on any evidence in the record. *Id.* at 394-95, 398. Crucially, whether the NLRA preempted the state court proceedings hinged on whether Davis

---

involve a collective bargaining agreement was not preempted by the NLRA and, therefore, the district court had subject matter jurisdiction to adjudicate that claim.

was an employee, in which case the NLRA would apply, or a supervisor, in which case the NLRA would not apply. *Id.* at 395. In its briefing to the Supreme Court, the union's "sole submission [was] that Davis was *arguably* an employee because the Board has not decided that he was a supervisor." *Id.* at 396 (emphasis added). Similarly, "[t]he [u]nion's claim of pre-emption in the state courts was also devoid of any factual or legal showing that Davis was arguably not a supervisor but an employee." *Id.* at 398. When the union argued preemption in the state court, its motion "contained no more than a conclusory assertion that state jurisdiction was preempted," and "[u]ntil that motion, no claim of pre-emption had been made out." *Id.*

The Supreme Court determined this was insufficient. "To accept the [u]nion's submission would be essentially equivalent to allowing a conclusory claim of pre-emption and would effectively eliminate the necessity to make out an arguable case." *Id.* at 396. Rather, "a party asserting pre-emption must put forth *enough evidence* to enable a court to conclude that the activity is arguably subject to the [NLRA]." *Id.* at 398 (emphasis added). "[T]hose claiming pre-emption must carry the burden of showing at least an arguable case before the jurisdiction of a state court will be ousted." *Id.* at 396.

Here, Highroller does not argue that 49 U.S.C. § 14501(a) vests subject matter jurisdiction "exclusively in one forum." *Davis*, 476 U.S. at 393 nn.9 & 11. Moreover, unlike the NLRA, which requires claims to be brought before the National Labor Relations Board, 49 U.S.C. § 14501(a) does not, on its face, require transportation carrier citations to be adjudicated in another forum. Therefore, it is doubtful that Highroller's claim, even if it had it been properly supported, would have divested the

NTA of subject matter jurisdiction to adjudicate the citations and fines at issue this case.

Nonetheless, even assuming *arguendo* that Highroller's preemption claim implicates the NTA's subject matter jurisdiction, Highroller presented no evidence at the administrative level concerning whether the restriction at issue is safety-related or not, such that the NTA's authority was even arguably preempted. *See Davis*, 476 U.S. at 395-96 (requiring a party asserting preemption to "put forth enough evidence to enable the court to find" preemption); *see also Davidson v. Velsicol Chem. Corp.*, 108 Nev. 591, 594, 834 P.2d 931, 933 (1992) ("The burden of establishing pre-emption is on the party seeking to give the statute such effect.").

Like in *Davis*, where the question of preemption turned on Davis' status as either an employee or a supervisor, the question of preemption in this case turns on whether Highroller's certificate restriction was safety-related or not. Highroller concedes that the NTA has jurisdiction to impose safety-related restrictions on charter bus operators. Therefore, to the extent the restriction in Highroller's certificate can be deemed safety-related, the NTA would necessarily have had subject matter jurisdiction to adjudicate citations related to a violation of that restriction. Had Highroller timely raised its preemption argument during the administrative hearing, the hearing officer could have considered evidence and argument regarding the purpose of the certificate restriction in order to determine in the first instance whether the restriction was, or was not, preempted by 49 U.S.C. § 14501(a).

But Highroller did not avail itself of the opportunity to litigate the preemption issue before the hearing officer and instead made only a

"conclusory claim of pre-emption" at the NTA general session. *See Davis*, 476 U.S. at 396. Highroller failed to present *any* evidence at the agency level to permit a finding that the restriction in its certificate was not safety-related. Highroller's claim was thus "devoid of any factual or legal showing" that its certificate restriction was not sufficiently safety-related, which was "a relevant inquiry in making out [its] case." *Id.* at 398. Therefore, Highroller's conclusory and bare assertion of preemption at the NTA general session was insufficient to establish that the NTA lacked subject matter jurisdiction to adjudicate the citations in this case.

We recognize that in the judicial review proceedings before the district court, both Highroller and the NTA briefed the issue of whether Highroller's certificate restriction was excluded from preemption under 49 U.S.C. § 14501(a)(2) for being related to safety. However, this post hoc briefing was insufficient for Highroller to establish jurisdictional preemption, both under the framework utilized in *Davis* and under existing Nevada law. In *Davis*, the union's post-trial brief contained only a conclusory assertion of preemption. 476 U.S. at 398. Moreover, when it argued for preemption, the union "did not assert that Davis was an employee, not a supervisor, let alone point to any evidence to support such a claim." *Id.* Here, similarly, Highroller's briefing in support of its petition for judicial review contained a conclusory assertion of preemption that did not point to any evidence to support such a claim in the administrative record.[7]

---

[7]In Highroller's petition for judicial review and on appeal, Highroller summarily asserts that because its certificate restriction is not universally applicable to *all* motor carriers, it cannot be related to safety for purposes of preemption under 49 U.S.C. § 14501(a). However, Highroller does not

COURT OF APPEALS
OF
NEVADA

(O) 1947B

We again emphasize the need for a fully developed record at the agency level in order to properly evaluate arguments made in a petition for judicial review. Though we review questions of law, including preemption, de novo, *see Nanopierce Techs.*, 123 Nev. at 370, 168 P.3d at 79, a sufficient record is still necessary for appellate review of administrative decisions. While de novo review entails that "we decide pure legal questions without deference to an agency determination," our review, like the district court's, is still limited to the agency record. *City of Reno v. Bldg. & Constr. Trades Council of N. Nev.*, 127 Nev. 114, 119, 251 P.3d 718, 721 (2011) (internal quotation marks omitted).

Insofar as the district court addressed Highroller's preemption claim on the merits by relying exclusively on the briefs or arguments of counsel rather than the administrative agency record, this was error. NRS 233B.135(1)(b) (providing that the district court's review is confined to the administrative agency record). As discussed above, Highroller's preemption argument required the NTA to make factual findings as to the restriction's purpose, and absent those findings in the administrative record, the district court could not conclude, as a matter of law, whether the restriction was federally preempted. Nonetheless, because Highroller did not establish at the agency level that its certificate restriction was preempted, jurisdictionally or otherwise, we affirm the district court's decision denying judicial review, albeit on other grounds. *See Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) ("If a judgment or order of a trial court reaches the right result, although it is based on an incorrect ground, the judgment or order will be affirmed on appeal.").

---

provide any legal authority or citations to the administrative record in support of its position.

*Highroller also waived its federal preemption argument by stipulating to informal disposition of its contested cases*

Lastly, the NTA argues that Highroller waived its preemption argument by stipulating to the violations and waiving additional findings of fact and conclusions of law. In response, Highroller reiterates its argument that due to federal preemption, the NTA lacked jurisdiction to adjudicate its contested cases. Insofar as Highroller relies on federal preemption as a basis to disregard its stipulations, for the reasons discussed above, Highroller is not entitled to relief. Nonetheless, we take this opportunity to clarify the effect of Highroller's stipulations on its subsequent preemption challenge on judicial review.

A stipulation is an agreement made before a judicial tribunal that requires the assent of the parties to its terms. *Taylor v. State Indus. Ins. System*, 107 Nev. 595, 598, 816 P.2d 1086, 1088 (1991) (recognizing the validity of a stipulation between an administrative agency and a party). Written stipulations are enforceable contracts. *Redrock Valley Ranch, LLC v. Washoe County*, 127 Nev. 451, 460, 254 P.3d 641, 647 (2011). Indeed, a stipulation to settle a lawsuit is binding if signed by the party against whom enforcement is sought. *See Casentini v. Hines*, 97 Nev. 186, 187, 652 P.2d 1174, 1175 (1981). If a stipulation contains an unequivocal statement indicating an intent to dispose of an entire case, a court may treat the stipulation accordingly. *See Taylor*, 107 Nev. at 599, 816 P.2d at 1088.

In administrative proceedings, a decision or order that is adverse to a party in a contested case must be in writing or stated on the record and ordinarily must include findings of fact and conclusions of law. NRS 233B.125. However, a party in a contested case may agree to "informal disposition" by stipulation and, in doing so, waive the requirement that the agency make findings of fact and conclusions of law. NRS 233B.121(5).

COURT OF APPEALS
OF
NEVADA

(O) 1947B

22

When a party to a contested case validly stipulates to informally dispose of the case and waive the findings of fact and conclusions of law otherwise required by NRS 233B.125, that party is bound by the terms of that stipulation. *See Second Baptist Church of Reno v. Mount Zion Baptist Church*, 86 Nev. 164, 172, 466 P.2d 212, 217 (1970) (stating that "valid stipulations are controlling and conclusive and both trial and appellate courts are bound to enforce them"). As a result, a party who waives an agency's obligations under NRS 233B.125 may not subsequently raise claims on judicial review that, had those claims been raised before the agency, would have required the agency to make additional findings of fact and conclusions of law.

In this case, the parties' written stipulations were valid and their terms enforceable. Both parties signed the stipulations and assented to their terms, which included an unequivocal statement of intent to informally dispose of Highroller's contested cases. *Taylor*, 107 Nev. at 598, 816 P.2d at 1088; *Casentini*, 97 Nev. at 187, 652 P.2d at 1175.

As noted above, in order to evaluate Highroller's preemption argument—raised for the first time *after* the stipulations were signed—the hearing officer would have had to make further findings of fact regarding the underlying purpose of Highroller's certificate restriction and conclusions of law to determine if the restriction fell within the safety exception of 49 U.S.C. § 14501(a)(2). Because the terms of the stipulations relieved the NTA of its obligation under NRS 233B.125 to make these findings of fact and conclusions of law, Highroller's stipulation waived its federal preemption argument for purposes of judicial review.

To the extent that Highroller argues on appeal that the NTA failed to meet its burden to establish a safety purpose for the restriction, we

Court of Appeals
of
Nevada

(O) 1947B

23

conclude that Highroller invited the claimed error. *See Pearson v. Pearson*, 110 Nev. 293, 297, 871 P.2d 343, 345 (1994) ("The doctrine of invited error embodies the principle that a party will not be heard to complain of any errors which he himself induced or provoked the court or the opposite party to commit." (quoting 5 Am. Jur. 2d *Appeal and Error* § 713 (1962)) (internal quotation marks omitted)). Because Highroller waived the NTA's obligation to make findings of fact and conclusions of law, it cannot challenge the omission of such findings and conclusions on appeal. Therefore, as Highroller invited the alleged error, it is not entitled to relief.[8]

*CONCLUSION*

Generally, consistent with traditional waiver principles, a party in a contested case before the NTA must raise arguments at the administrative hearing in order to properly preserve those arguments for appellate review. The agency must have an opportunity to respond, and the hearing officer must also have an opportunity to fully consider the party's claim. If an argument is presented for the first time at an NTA general

---

[8]The NTA argues on appeal that Highroller's petition for judicial review should have been dismissed for failure to timely serve the Nevada Attorney General in accordance with NRS 233B.130(2)(c)(1). However, as the NTA recognizes, the time for service can be extended upon a showing of good cause. *Heat & Frost Insulators & Allied Workers Local 16 v. Labor Comm'r of Nev.*, 134 Nev. 1, 4-5, 408 P.3d 156, 159-60 (2018). In this case, the district court found that good cause existed to extend the time for Highroller to properly serve the Attorney General. We review the district court's decision to enlarge time for an abuse of discretion. *Scrimer v. Eighth Judicial Dist. Court*, 116 Nev. 507, 513, 998 P.2d 1190, 1193-94 (2000). After reviewing the record in this case, we conclude that the district court did not abuse its discretion when it enlarged the time for Highroller to effectuate service. *Id.* Insofar as the parties have raised other arguments that are not specifically addressed in this opinion, we have considered the same and conclude that they do not present a basis for relief.

session, the Authority is not obligated to consider it. Though a challenge to subject matter jurisdiction may be raised at any time, in this case Highroller's conclusory assertion of preemption at the NTA general session, without reference to any evidence in the agency record, was insufficient to establish that the NTA lacked subject matter jurisdiction to enforce Highroller's certificate restriction. Further, because Highroller failed to adequately develop the record at the agency level, neither the district court nor this court can fully assess the merits of Highroller's preemption claim, as our review is limited to the agency record. Lastly, Highroller waived its preemption argument by stipulating to an informal disposition of its contested cases and waiving further findings of fact and conclusions of law. Accordingly, we affirm the district court order granting in part and denying in part Highroller's petition for judicial review in this case.

_____, J.
Westbrook

We concur:

_____, C.J.
Gibbons

_____, J.
Bulla